[Crim. No. 15888. Second Dist., Div. Two. Aug. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MARY GONSALVES, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Arnold W. Lieman, Deputy Attorney General, for Plaintiff and Respondent.

WRIGHT, J.—This is an appeal from a judgment of conviction of a violation of section 11500.5 of the Health and

Safety Code. Defendant, Mary Gonsalves, was charged in the information with a violation of section 11500.5 of the Health and Safety Code in that she possessed heroin for sale. Two prior convictions of violation of section 11500, Health and Safety Code, were alleged against defendant. Defendant's motions under section 995 and section 1538.5 of the Penal Code, submitted on the transcript of the preliminary hearing, were denied. Defendant pleaded not guilty to the charge and waived right to trial by jury on this case and on the two prior convictions. It was stipulated at the time of trial that the cause be submitted on the testimony contained in the transcript of the preliminary hearing, subject to the court's rulings, with each side reserving the right to offer additional evidence. It was further stipulated that all exhibits received in evidence at the preliminary hearing were received in evidence at the trial. Defendant was found guilty as charged. Motions for probation and for a new trial were denied. The court found the second prior conviction true. The first alleged prior conviction was stricken on motion of the People. Defendant was sentenced to the California Institution for Women for the term prescribed by law. The sentence was ordered to run concurrently with any other sentence defendant may owe. Defendant appeals from the judgment of conviction.

## STATEMENT OF FACTS

Responding to a lead supplied by an informant, Officer Ginder staked out the residence of Mary Gonsalves (Mary) and Annie Juarez (Annie). At this time he observed a brief encounter between Annie and a male Mexican in front of the house. A few days later on March 27, 1968, Ginder, along with Officers Garrahan and Maga, followed Mary to a supermarket parking lot. Ginder and Garrahan observed a transaction between Mary and a man in an automobile in the parking lot. After the transaction was completed, the man drove off at a high rate of speed with Ginder in pursuit. A white powdery substance was shaken from a condom and eventually the driver of the car crashed into a parked car and a telephone pole. Ginder observed puncture marks on the inner portion of the arms of the driver who was attempting to escape and Ginder formed the opinion that said person was a narcotic addict. These events led the officers to believe that Mary and Annie were selling heroin. Garrahan then confronted Mary, told her he was a police officer, and said he was conducting a narcotics investigation. While talking with Mary, he observed

certain physical characteristics from which he formed the opinion that she was under the influence of narcotics. Garrahan then placed her under arrest and informed her of her constitutional rights. Garrahan asked Mary if he could search her home which was located some distance from the scene of arrest, and she replied, ''Yes, there is nothing there. Go ahead and search.''

Officer Burke conducted a search of the premises. In a vacant lot within arms reach of a wall which was next to the premises, Burke found a large rubber condom containing a quantity of powder resembling heroin. He then confronted Mary and Annie and two other individuals with the narcotics and advised them of their constitutional rights.

Burke told everyone in the room that in his opinion they were all dope peddlers and were all under arrest for possession of narcotics. He further stated that they were endangering the children by having narcotics present, and that the children should be placed in police custody. In regard to the comment concerning the children, Burke said, ''There is a good chance there will be another charge against you.'' He did not threaten, nor did he hear anyone else threaten, that unless someone claimed the narcotics, everybody in the house would be arrested.

At this point Burke asked appellant if she wanted to make a statement. She said she did. He asked her to whom the narcotics belonged, and she said they belonged to her. Officer Burke then asked her where he found the narcotics, and defendant went outside with the officers, reached into the bushes at the exact spot where Burke had removed the narcotics, and said, ''This is where you found the items.''

It was stipulated that Officer Burke was an expert in narcotics, and also that the condom found by Burke contained heroin. It was Burke's opinion that the narcotics were packaged in such a way and were of sufficient quantity that they were possessed for sale.

At trial, defendant took the stand on her own behalf and testified that the officer told her everyone in the house would have to go to jail unless somebody claimed ownership of the narcotics. She claimed the officer showed her where he found the narcotics, and that she did not point out the spot in the bushes where the narcotics were found. She denied having any knowledge of the presence of the narcotics. In addition, she claimed her confession was not true, and that it was made solely to prevent her family and the children from going to jail.

## Defendant's Contentions

 Defendant contends that her confession was coerced and therefore erroneously admitted into evidence in that her relatives and friends were threatened with arrest and the confession was merely an attempt to free them from guilt.

Defendant claims it is the duty of this court to examine contradicted evidence to determine independently whether the trial court's determination of voluntariness of the confession was proper, citing *People* v. *Berve* (1958) 51 Cal.2d 286, 290 [332 P.2d 97]. However, the evidence in *Berve* was actually uncontradicted, which is not the case here. Defendant Gonsalves' testimony was in direct conflict with that of Officer Burke on the question of whether everyone was threatened with arrest unless someone claimed the narcotics. It is not the function of this court to reweigh conflicting evidence. (*People* v. *Jones* (1963) 221 Cal.App.2d 37 [34 Cal.Rptr. 267].) An experienced trier of facts did not regard the evidence as indicating coercion, and that finding will not be disturbed unless error appears as a matter of law from the record presented.

 It is true that "Where a confession is coerced by a threat to arrest a near relative, it is not admissible." (*People* v. *Rand* (1962) 202 Cal.App.2d 668, 673 [21 Cal.Rptr. 89].) In *Rand* and in the cases following the rationale of *Rand*, it appeared without contradiction that the arrests were threatened for the purpose of eliciting confessions. (See, e.g., *People* v. *Trout*, 54 Cal.2d 576 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418]; *People* v. *Mellus*, 134 Cal.App. 219 [25 P.2d 237].) However, *Rand* has been continually distinguished in cases where the defendant's free will was not overborne by the officer's conduct. In *People* v. *Boggs* (1967) 255 Cal.App. 2d 693 [63 Cal.Rptr. 430], an officer stated to defendant and his wife that he believed they were both involved in the case and it was his intention to hold them. Boggs then confessed, but the court held *Rand* inapplicable because it did not appear that his wife was being held for the express purpose of securing a confession from Boggs.

In *People* v. *Bryan* (1967) 254 Cal.App.2d 231 [62 Cal. Rptr. 137], an officer's statement that it was sometimes the practice to take both the husband and wife to jail was held to be a simple statement of fact and not a threat.

In *People* v. *Sisto* (1968) 261 Cal.App.2d 315 [67 Cal.Rptr. 724], defendant's confession came after interrogation of his wife and his wife's minor brother. The court found the police

had reasonable grounds for the questioning and refused to follow *Rand*.

In *People* v. *Jones,* 221 Cal.App.2d 37 [34 Cal.Rptr. 267], defendant, his wife, and his parents were simultaneously arrested and taken to the station for interrogation. The court held the ensuing confession was not coerced, since the arrests occurred before the confession and since they were based on reasonable grounds.

■■■ In the instant case, Officer Burke's statement[1] that everyone in the house was under arrest for possession of narcotics could not be said to be a threat calculated to coerce defendant to confess. After the discovery of narcotics on the premises, he merely made a statement of fact of arrest based upon probable cause.

Defendant relies on Officer Burke's statement that "There is a good chance there will be another charge against. you." Such reliance is misguided. It is clear from the context of his testimony that he was referring to the children being endangered by the presence of narcotics. It was his opinion that the children should be placed in police custody regardless of to whom the narcotics belonged. It is unreasonable to presume that the statement was a threat for the purpose of eliciting a confession.

Defendant claims there is no distinction between this case and *Rand* in that both involved an endeavor by the defendant to free others from guilt. This interpretation is a misreading of *Rand,* however, since that case in no way relied on what

---

[1]The pertinent parts of Officer Burke's testimony in regard to the alleged threats are as follows: "Q [By defense counsel] Did you hear one, or did you yourself threaten that unless someone claimed the narcotics, everybody in the house was going to be arrested? A. No. I did not hear anybody threaten. I made a statement. There was no threat to it. It was fact. Q However, the statement was made: is that not true? A No. That is not exactly what was said. Q Well, what was said, then, Officer? A I stated to everybody in the room that I had found this quantity of narcotics and showed them and it was my opinion that the people in the house were dope peddlers and that at this point, everybody in the house was under arrest for narcotics, possession of narcotics. Q And what was said further, then? A At this point, Annie and Mary looked at each other quite carefully and Mary said, 'The narcotics is mine.' Q Did you see any small children in the house? A. Yes. Q Anything said about those small children? A Yes. Q What was said about them? A I told them, 'In my opinion you were endangering these children by having narcotics present on this location.' I said, 'There is a good chance there will be another charge against you.' Q Something said to the effect that the children would be placed in custody? A Yes, there was. There certainly was. Q And this was all said prior to the time that Mary Gonsalves told you, 'Yes, the narcotics are mine,' is that correct? A Yes. I believe I stated that for the welfare of the children, they should be placed in the police custody . . . ."

the defendant believed he would accomplish by confessing.

■ In any event, as stated in *People* v. *Boggs, supra,* at page 700, ''The fact that a defendant believes or hopes that his confession may result in the exoneration of others does not render it involuntary as a matter of law.'' ■ Even if defendant confessed to clear her family and friends, there is nothing in the record to indicate she reached her decision as a result of improper conduct by the police.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1969.