[Crim. No. 3303. Fourth Dist., Div. Two. Nov. 3, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DALE LEROY DANIELS, Defendant and Appellant.

**COUNSEL**

Gary Bellow for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Jeffrey T. Miller, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**TAMURA, Acting P. J.**—Following a jury trial defendant was found guilty of two counts of forcible rape and three counts of incest. He was

denied probation and sentenced to state prison on each count, sentences to run concurrently. He appeals from the judgment of conviction.

Defendant was charged with forcing his 16-year-old daughter to have sexual intercourse with him on two different occasions. Those acts constituted the bases for two counts of incest and two counts of forcible rape. He was also charged with coercing his wife, through fear of physical force, to engage in an act of sexual intercourse with their 18-year-old son. This was the basis for a separate count of incest. Defendant's wife and 16-year-old daughter (the victim of the incest) testified to the commission of the acts charged. In addition the prosecution was permitted to introduce a tape recording of statements taken from defendant in which he admitted the acts charged. Defendant took the stand and denied committing any of the offenses.

Defendant does not challenge the sufficiency of the evidence to support his conviction. His principal contention on appeal is that the taped confession should have been excluded because it was obtained in violation of the principles enunciated in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L. Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. We therefore limit our review of the evidence to that portion pertaining to the admissibility of the confession.

The offense which culminated in defendant's arrest occurred on May 13. The evidence reveals that on the evening of May 13, while defendant's wife and other children were absent from the house, defendant engaged in an act of intercourse with his 16-year-old daughter. That evening the sheriff's office received a call from an unidentified source that a rape had been committed at the street address of defendant's home. Officer Hardy went to defendant's house, spoke to him and observed defendant's 16-year-old daughter, but noting nothing unusual, left. Later that evening defendant's wife and children appeared at the sheriff's office and reported what had been going on in their home. At about 9:30 p.m., a deputy sheriff went to defendant's house and picked up the 16-year-old daughter so she could be questioned. Later at about 10 p.m. Hardy returned to defendant's house and took him to the Barstow substation of the sheriff's office. Defendant testified that at the time he was taken into custody Hardy informed him that his wife and children were all at the station and had reported that he had been molesting his daughter.

About 3 or 4 a.m. on March 14 Hardy talked to defendant. He advised defendant of his constitutional rights and defendant stated that he did not wish to waive them. According to defendant, he told Hardy that because of the seriousness of the charge, he did not wish to talk until he consulted an attorney. At the same meeting, after defendant had asserted his rights, Hardy informed defendant that his wife and son had been arrested for

incest, that his other children (defendant had eight children) were at juvenile hall, and that his 16-year-old daughter had been examined and that the doctor thought she was 10 or 12 weeks pregnant. The record is silent as to whether the information was furnished in response to defendant's inquiry or was volunteered by Hardy. Defendant was not questioned and was permitted to go back to sleep.

About 12 noon on March 14 a deputy sheriff informed Hardy that defendant wished to see him. Hardy testified that defendant stated that he was concerned about his family and wished to make "the tape" so he could clear his family. Hardy then readvised defendant of his rights and defendant stated that he waived them and did not desire an attorney. In the course of the ensuing interview defendant admitted that he had committed the offenses charged.

Hardy testified that neither he nor any other officer interrogated defendant after the 3 a.m. meeting; that he never told defendant that his family would be released or that it would help them if he made a statement; and that "the only thing I told the defendant was that I would have to submit the whole case to the district attorney before my decision would be made whether his family would be released."

Defendant testified that from a criminal law course he had taken at Riverside City College it was his impression that any person forced to commit a crime under threat of death is not legally responsible for the commission of the crime, and that he confessed because he thought that if he told the officers he forced members of his family to engage in the acts charged, they would be absolved and released from custody. He also testified that his daughter had told him of an act of sexual intercourse with a teenage boy friend, that he thought her pregnancy resulted from that act, and believed that if he admitted an incestuous relationship with his daughter, she would be able to obtain a legal abortion.[1]

Defendant urges (1) that his initiation of the interview at which he

---

[1]Defendant testified on direct examination:

"A Well, I knew that if I would—I knew the only way I felt that the only way I could get me [sic] wife and son released from jail was to say that I had forced them under the threat of death to commit the act that they stated that they had.

"Q Was that your only reason for calling the detective and telling him that you wanted to tell him something?

"A Well, not only that. It was the fact that I thought my daughter was pregnant, too. So, I felt that if I had—if I confessed to it and she could obtain a legal abortion if she wished.

"Q Now, this business of a legal abortion, do you have some information that your daughter could obtain an abortion if the pregnancy was due to an incestuous relationship?

"A Well, I wasn't sure about California; but, the papers have been full of abortion laws becoming more lenient and I felt that it would be, it might give her a chance."

confessed and his waiver of *Miranda* rights were induced through coercive psychological influence exerted by the police in violation of his *Miranda* rights and were therefore involuntary; and (2) that his confession was involuntary in the traditional sense.

Preliminarily, we review the principles by which we must be guided in resolving the issues thus framed.

■ Once a defendant asserts his *Miranda* rights, interrogation must cease. (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 722-723, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Ireland,* 70 Cal.2d 522, 536 [75 Cal.Rptr. 188, 450 P.2d 580].) If a suspect says he wants an attorney, he may not be interrogated until an attorney is present. (*Miranda* v. *Arizona, supra,* at p. 474 [16 L.Ed.2d at p. 723]; *People* v. *Ireland, supra,* at p. 536.) ■ A confession obtained as a result of a continuance of the "interrogation process" is, under the "stern" *Miranda* principles, deemed to be the product of compulsion and is inadmissible. (*People* v. *Ireland, supra,* at p. 537.) "The form of the renewed queries, however subtle or gentle, cannot be considered in determining whether there has been a violation of the stern principles prescribed by the Supreme Court in *Miranda*." (*People* v. *Fioritto,* 68 Cal.2d 714, 720 [68 Cal.Rptr. 817, 441 P.2d 625]; *People* v. *Ireland, supra,* at p. 537.)

■ But notwithstanding an initial assertion of the right to remain silent, statements thereafter made as a result of defendant's own initiative are not subject to the exclusionary rule of *Miranda*. (*Miranda* v. *Arizona, supra,* p. 478 [16 L.Ed.2d at p. 726]; see *People* v. *Ireland, supra,* at p. 536; *People* v. *Fioritto, supra,* at p. 719; *People* v. *Lara,* 67 Cal.2d 365, 392 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Treloar,* 64 Cal.2d 141, 147 [49 Cal.Rptr. 100, 410 P.2d 620]; *People* v. *Tomita,* 260 Cal.App.2d 88, 92-93 [66 Cal.Rptr. 739].) However, the initiation of the confession must be free and voluntary; it must not be the product of coercive official conduct. (See *People* v. *Fioritto, supra,* 68 Cal.2d 714, 719; *People* v. *Milton,* 270 Cal.App.2d 408, 416 [75 Cal.Rptr. 803].)

■ Waiver of *Miranda* rights and voluntariness of a confession are matters to be determined initially by the trial judge outside the presence of a jury. (*Jackson* v. *Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205].) However, the defendant may consent to a hearing on the

issue of voluntariness in the presence of the jury. (*Pinto* v. *Pierce,* 389 U.S. 31 [19 L.Ed.2d 31, 88 S.Ct. 192].) ▮ The burden is on the prosecution to establish waiver and voluntariness by proof beyond a reasonable doubt. (*People* v. *Stroud,* 273 Cal.App.2d 670, 678 [78 Cal.Rptr. 270], hearing denied; see *People* v. *Davis,* 66 Cal.2d 175, 180-181 [57 Cal.Rptr. 130, 424 P.2d 682].) ▮ An express finding on the record on those issues need not be made; such findings will be implied from the court's order admitting the confession into evidence.[2] (*People* v. *Smith,* 270 Cal.App.2d 715, 721 [76 Cal.Rptr. 53]; see *People* v. *Stroud, supra,* at p. 679.)

▮ On appeal, the trial judge's findings on the question of waiver of rights and voluntariness will not be set aside unless they are "palpably erroneous." (*People* v. *Robinson,* 274 Cal.App.2d 514, 520 [79 Cal. Rptr. 213]; *People* v. *Pierce,* 260 Cal.App.2d 852, 858 [67 Cal.Rptr. 438]; *People* v. *Carter,* 258 Cal.App.2d 628, 634 [65 Cal.Rptr. 845].) It is not the function of the reviewing court to resolve conflicts in the evidence, to reweigh it, or to make an independent determination as to whether the prosecution has sustained its burden beyond a reasonable doubt. (*People* v. *Stroud, supra,* 273 Cal.App.2d 670, 675; see *People* v. *Massie,* 66 Cal.2d 899, 907 [59 Cal.Rptr. 733, 428 P.2d 869].) It is the duty of an appellate court, however, to make an independent examination of the uncontradicted evidence to determine whether a confession has been obtained in compliance with *Miranda* requirements and was voluntarily made. (*People* v. *Sanchez,* 70 Cal.2d 562, 571 [75 Cal.Rptr. 642, 451 P.2d 74].) Those issues must be reviewed in light of the whole record and "the totality of circumstances." (*Greenwald* v. *Wisconsin,* 390 U.S. 519 [20 L.Ed.2d 77, 88 S.Ct. 1152]; *Clewis* v. *Texas,* 386 U.S. 707 [18 L.Ed.2d 423, 87 S.Ct. 1338]; *People* v. *Sanchez, supra,* at p. 572; *People* v. *Johnson,* 70 Cal.2d 469, 478 [74 Cal.Rptr. 889, 450 P.2d 265]; *People*

---

[2]It has been suggested that while an express finding need not be made on *Miranda* compliance or voluntariness, as a matter of practice such findings ought to be made in order to eliminate any doubt that the trial court passed on those issues. (*People* v. *Smith,* 270 Cal.App.2d 715 [76 Cal.Rptr. 53].) We concur in the recommendation

v. *Lara, supra,* 67 Cal.2d 365, 386; *People* v. *Stroud, supra,* 273 Cal.App. 2d 670, 680.)

■ The thrust of defendant's contention is that Detective Hardy's disclosures concerning defendant's family and the possible condition of his daughter, made after defendant had asserted his right to remain silent and right to counsel, violated *Miranda* principles and rendered his subsequent initiation of the confession and waiver of rights the product of compulsion and, hence, involuntary as a matter of law.

Guided by the applicable principles heretofore mentioned, we have reviewed the entire record and have concluded that defendant's confession was voluntarily initiated by him and that its use was not violative of his constitutional rights. In reaching our conclusion we have considered the following factors: (1) After defendant asserted his rights at 3 a.m. neither Hardy nor any other officer questioned defendant. Hardy's testimony in this respect is uncontradicted. (2) Some nine hours elapsed between defendant's assertion of his rights and his initiation of the interview at which he confessed.

■ There was no deception, trickery, or cajolery. There was no evidence or suggestion that the information which Hardy gave defendant was untrue;[3] that Hardy told defendant that his family would not be taken into custody if he confessed; or that they would be released if he talked. Under the circumstances of his arrest defendant was entitled to know what Hardy told him. His 16-year old daughter had been picked up from his home at 9:30 p.m. before he was arrested and at the time he was arrested he had been told that his wife and all of the other children were at the sheriff's office and had reported what had taken place at his home. (4) Defendant's decision to initiate the interview was impelled by his impression of the law gained from a criminal law course taken at Riverside City College. His testimony at trial that an added reason for his decision to confess to an incestuous relationship with his daughter was to enable her to obtain a legal abortion even though he was not responsible for her condition, is of doubtful credibility.[4] (5) Following defendant's offer to make a statement, Hardy advised defendant of his constitutional rights and defendant unequivocally stated he had waived them. Hardy told defendant, "If you want

---

[3]The record is unclear whether Hardy told defendant about his family in response to the latter's inquiry or whether the information was furnished gratuitously. In view of the circumstances surrounding defendant's arrest, it could reasonably be inferred that defendant did inquire about his family. Nevertheless, we shall assume that Hardy volunteered the information.

[4]There is no suggestion that Hardy's statement to defendant that the latter's daughter had been examined and the doctor thought she was 10-12 weeks pregnant was false. Defendant's daughter testified that she was not pregnant but did state that she had missed two periods and at the time thought she was pregnant.

an attorney present, you can have one here now at the county's expense." Defendant's response was: "I don't want one." (6) The evidence is uncontradicted that no promises or inducements were made. Hardy testified that none were made and defendant mentioned none in his testimony.

Undoubtedly a process of custodial interrogation may take many forms and even conversation not terminated by a rising inflection of the voice or even nonverbal conduct may be part of such process. But, in the instant case, even assuming that Hardy's conversation with defendant at 3 a.m. concerning his family could be deemed to have been a part of the "interrogation process," there is no evidence of actual questioning at any time until defendant initiated the 12 noon interview, and we therefore are satisfied that in light of the facts to which we have alluded, it did not taint his confession and render it inadmissible as a matter of law. We conclude that under the "totality of circumstances" as disclosed by the whole record, defendant voluntarily initiated his confession and voluntarily, knowingly and intelligently waived his *Miranda* rights.

What we have said disposes of defendant's contention that his confession was involuntary in the traditional substantive sense. The cases cited by defendant (*People* v. *Trout,* 54 Cal.2d 576 [6 Cal.Rptr. 759, 354 P.2d 231]; *People* v. *Clark,* 263 Cal.App.2d 87 [89 Cal.Rptr. 218]; *People* v. *Manriquez,* 231 Cal.App.2d 725 [42 Cal.Rptr. 157]; *People* v. *Rand,* 202 Cal.App.2d 668 [21 Cal.Rptr. 89]; *People* v. *Mellus,* 134 Cal.App. 219 [25 P.2d 237]) are inapposite. They dealt with official threats to arrest a relative unless defendant talked or promises to release a relative if defendant confessed. In the instant case the evidence is uncontradicted that there was no promise to release defendant's family, nor *promise* to take the matter up with higher authorities.

Defendant contends that the fact that his answers during the interview consisted primarily of mere "yes" answers to leading questions propounded by Hardy is evidence that his confession was coerced. However, at trial defendant explained the manner in which he answered and his hesitancy to answer certain questions by saying he wanted to be certain that his statements did not conflict with anything his wife or children had told the officers, not that such answers stemmed from the fact that he felt he was answering under compulsion.[5]

---

[5]Defendant testified on direct examination:

"Q In fact, do you recall any place on the tape in which you waited until the detective told you what your wife had said before you answered him?

"A No. I don't recall that; but I was—I didn't want to take a chance on contradicting any of the statement that he had told me that they had given him.

"Q So, that was your purpose then, in making the tape, to affirm, if possible, the statements that your wife had made to the police?

"A Yes, sir."

 The contention that defendant was not accorded a full hearing on *Miranda* compliance and voluntariness in accordance with the requirement of *Jackson* v. *Denno, supra,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774] is likewise devoid of merit.

Prior to the introduction of defendant's confession into evidence the court held a hearing outside the presence of the jury. At that hearing Hardy testified to the circumstances leading to defendant's confession and he was cross-examined by defendant's counsel.[6] Defendant did not take the stand at that hearing but was not precluded from so doing. Defendant points to the fact that the court did not first hear the tape. However, the record discloses that although the judge expressed the view that as part of the foundation on admissibility he should listen to the tape, defense counsel stated that it was unnecessary. The parties informed the court that defense counsel had previously heard the tape. Finally, except for the disclosure that Detective Hardy had informed defendant about his family at the 3 a.m. meeting, defendant's version of the circumstances surrounding his confession was not at variance in any material respect from that given by Detective Hardy at the hearing outside the presence of the jury.

 Defendant contends that the introduction of certain letters written by defendant to his wife after he had been arrested and was awaiting trial was error. The letters were used for impeachment purposes in cross-examining defendant.

Section 985 of the Evidence Code provides: "There is no privilege under this article in a criminal proceeding in which one spouse is charged with: "(a) A crime committed at any time against the person or property of the other spouse or of a child of either.

"(b) A crime committed at any time against the person or property of a third person committed in the course of committing a crime against the person or property of the other spouse.

"(c) Bigamy or adultery.

"(d) A crime defined by Section 270 or 270a of the Penal Code."

Defendant urges that section 985 does not apply to communications made after the commission of a crime and after criminal proceedings have been instituted. We find no merit in the contention. Interspousal communi-

---

[6]It should be noted that the trial judge was never afforded an opportunity to rule on the issue now raised by defendant, namely, the effect of Hardy's statement to defendant concerning his family on the admissibility of the confession. That evidence came to light after the court had ruled on the admissibility of the confession and after the tape recording had been played to the jury. Defendant never requested the court to reconsider its ruling on the admissibility of the confession in the light of that evidence.

cations are expressly made nonprivileged where a crime has been committed against the person of the other spouse or the children of either. We find no rational basis for adopting the interpretation suggested by defendant.

The further contention that use of the letter violated defendant's *Miranda* rights and his right to counsel under the doctrine of *Massiah* v. *United States,* 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], is equally devoid of merit. The statements were voluntarily made without any official involvement.

Finally, defendant contends that it was error to sentence him on all of the counts even though the sentences were made to run concurrently. This contention is meritorious. Defendant was charged with incest and rape against his daughter on two separate occasions. Count I (rape) and count II (incest) arose out of one single act, and count III (rape) and count IV (incest) arose out of a separate single act. Section 654 of the Penal Code prohibits double punishment of a single criminal act that constitutes more than one crime, and concurrent sentences are double punishment. (*People* v. *Quinn,* 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705].) In these circumstances defendant may be sentenced only for the more serious offense. (*People* v. *Quinn, supra,* at p. 556.) The crime of incest must be considered as included within the greater crime of forcible rape. (*People* v. *Bales,* 189 Cal.App.2d 694, 705 [11 Cal.Rptr. 639].)

The judgment of conviction as to counts I, III, and V is affirmed. The judgment as to counts II and IV is reversed for the limited purpose of vacating the sentences as to those counts.

Gardner, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 23, 1969.

---

*Assigned by the Chairman of the Judicial Council.