[Crim. No. 9136. First Dist., Div. Two. Dec. 22, 1970.]

In re JERRY RINEGOLD on Habeas Corpus.

## Counsel

C. Randall Schneider for Petitioner.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Phelan, Deputy Attorneys General, for Respondent.

## Opinion

TAYLOR, J.—Simultaneously with the direct appeal (*People* v. *Rinegold,* No. 8525, *ante,* p. 711 [92 Cal.Rptr. 12]) from the merits of a judgment of conviction entered on a jury verdict finding him guilty of assault with a deadly weapon (Pen. Code, § 245), this court has been directed to consider a petition for writ of habeas corpus subsequently filed.[1] Although we have concluded that there are insufficient grounds for the relief requested, the petition presents a question of first impression as to the application of *Pineda* v. *Craven* (9th Cir. 1970) 424 F.2d 369.

Petitioner contends that his confinement is unlawful as certain evidence obtained in violation of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], was admitted without objection from defense counsel. Because of the failure to object, petitioner was precluded from raising the *Miranda* issue on appeal (*In re Dennis M.,* 70 Cal.2d 444 [75 Cal.Rptr. 1, 450 P.2d 296]; *People* v. *Huddleston,* 275 Cal.App.2d 859 [80 Cal.Rptr. 496]; *People* v. *Duty,* 269 Cal.App.2d 97, 105 [74 Cal.Rptr. 606]). Also, the documentary basis of his contentions, the affidavit executed by his trial counsel on April 9, 1970, was a matter outside the record that could not be considered on the direct appeal from the judgment (*People* v. *Gardner,* 71 Cal.2d 843 [79 Cal.Rptr. 743, 457 P.2d 575]).

Habeas corpus is the proper remedy for a collateral attack on constitutional grounds when there is no opportunity to raise the constitutional issue on appeal (*In re Spencer,* 63 Cal.2d 400, 406 [46 Cal.Rptr. 753, 406 P.2d 33]; *In re Varnum,* 63 Cal.2d 629 [47 Cal.Rptr. 769, 408 P.2d 97]), although in the absence of special circumstances, habeas corpus cannot serve as a substitute for appeal (*In re Tedwell,* 251 Cal.App.2d 369, 373

[1]As petitioner is presently incarcerated in the California Men's Colony, a medium security institution in San Luis Obispo County, over which this court has no territorial habeas corpus jurisdiction (Cal. Const., art. VI, § 10; *People* v. *Clinton,* 243 Cal.App.2d 284, 287 [52 Cal.Rptr. 221]), the petition was originally filed in the state Supreme Court and transferred to this court with directions to consider it along with the appeal.

[59 Cal.Rptr. 305]). To reach the questions presented, we assume, for the purposes of discussion, that the remedy is appropriate, even though here, unlike *Spencer, Varnum* and *Tedwell, supra,* petitioner had the opportunity to raise the constitutional issue at trial and on appeal by making a proper and timely objection.

The facts as revealed by the record in *People* v. *Ringold* (No. 8525, *supra, ante,* p. 711) are as follows: Two days after the assault, Captain Howard of the Mendocino Sheriff's Department, interviewed petitioner, who was in custody in the Sonoma County jail, on another matter. Captain Howard and his fellow officer advised petitioner of his *Miranda* rights and indicated that they were investigating a case involving an assault with a deadly weapon. Petitioner replied that they were trying to trick him and were "after more than that." Petitioner would not reply as to whether he understood his constitutional rights and refused to sign a written waiver.[2]

Petitioner repeatedly asked the officers whether they were investigating only an assault and accused the officers of trying to trick him. Petitioner then more or less blurted out, "What would happen if a man were shot with a .357 Magnum?" and indicating with his hands an area about 10 inches in diameter, and continued: "Wouldn't it make a hole?" Petitioner also asked: "Is Bud still alive?" Neither Captain Howard nor his companion had said anything about a .357 Magnum or mentioned the name of the victim. The interrogation took place in the visitors' room and was terminated in about 19 minutes when petitioner indicated he did not want to talk any further.

The rule of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], that a person taken into custody must, before being subjected to questioning, be given warnings about his Fifth and Sixth Amendment rights, applies to a person who is in custody for an offense entirely separate from the one under investigation (*Mathis* v. *United States,* 391 U.S. 1 [20 L.Ed.2d 381, 88 S.Ct. 1503]).

We turn first to the question of whether the record reveals a violation of petitioner's *Miranda* rights. Petitioner, relying on *People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625], contends that his admissions to Captain Howard should have been excluded. In *Fioritto,* after defendant was brought into the police station, he was advised of his *Miranda* rights and was asked to sign a waiver. When he refused, he was immediately confronted with two accomplices who had confessed, whereupon, he waived his rights and confessed to the crime. Our Supreme Court reversed, stating that the initial refusal was a sufficient indication of his

---

[2] The record is not clear as to exactly when this refusal occurred.

wish to invoke the privilege against self-incrimination. The court, however, indicated (at pp. 718-720) that even a defendant in custody might make statements admissible under *Miranda* if it were shown that such statements were the result of the defendant's own initiative and did not arise in a context of custodial interrogation.

 The record here does not indicate the unequivocal refusal and the coercive elements present in *Fioritto*. However, precisely because there was no *Miranda* objection by defense counsel, the record is somewhat ambiguous. It is not clear whether petitioner's incriminating questions to Captain Howard occurred before or after his refusal to sign the written waiver of his rights. Nor is it clear whether there had been any interrogation of petitioner. The record merely indicates that after being informed of the nature of the crime being investigated, petitioner told the officers they were "after more than that" and were trying to "trick him." But, in any event, petitioner's admissions were in the form of questions to the officers. This in itself implies a voluntariness, and volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by *Miranda* (*Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). Thus, statements made after petitioner was informed of the charge as a result of his own initiative are not subject to the exclusionary rule (*People* v. *Fioritto, supra,* pp. 718-720).

*People* v. *Treloar,* 64 Cal.2d 141 [49 Cal.Rptr. 100, 410 P.2d 620], illustrates the type of statements, made on defendant's own initiative, that are not subject to the exclusionary rule. In *Treloar,* the defendant after his arrest initiated a conversation with the officers who were taking him to the police station. The defendant volunteered that if the police had been a few minutes later, he would not have been caught as he was on his way to South America and then asked how long the murder victim had lived. One of the officers replied and asked what had happened to the victim in the bar. The defendant responded that the victim "tried to be a hero" and "wouldn't do what he was told." Our Supreme Court, applying the then applicable standards of *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], held that both of these statements were admissible as the defendant had been in custody for only a few minutes and was being taken to the police station, the conduct of the police was neither intimidating nor interrogatory nor designed to elicit statements, the questioning was initiated by the defendant, and his final statement concerning the victim was the response to a neutral inquiry invited by his own remarks.

Also in point is *People* v. *Daniels,* 1 Cal.App.3d 367 [81 Cal.Rptr. 675], hearing in the Supreme Court denied December 23, 1969. In *Daniels,* the defendant was in custody on charges of rape and incest involving his 16-

year-old daughter. Defendant, after being duly informed of his rights, indicated he wished to assert them by stating that he did not wish to talk until he consulted an attorney. Thereafter, the officer told him that his wife and son had been arrested for incest, his other children were at juvenile hall, and the victim had been examined and found pregnant. The record was silent as to whether this information was furnished in response to defendant's inquiry or volunteered. Defendant was not questioned and went to sleep. The following day, when an officer visited the defendant, he stated he was concerned about his family and wished to make a "tape" to clear his family. Defendant was then again advised of his rights, waived them, and made a statement confessing the offenses charged. On appeal, the court rejected a contention that the statement and waiver of rights were induced through the coercive psychological influence in violation of *Miranda*. The court noted, at page 375, that there was no deception, trickery or cajolery, as the information concerning the defendant's family was true.

Similarly here, the most reasonable view of the record is that petitioner's questions to Captain Howard were spontaneous and initiated by petitioner after he had been told the truth, i.e., that the officers were investigating an assault with a deadly weapon. Therefore, here, as in *People v. Daniels, supra,* the statements were made on petitioner's own initiative and, therefore, not subject to the exclusionary rule of *Miranda*. What we have said also disposes of the contention that the statements were involuntary in the traditional substantive sense.

We turn then to the more complex question of whether habeas corpus is an appropriate remedy in the instant case to raise an issue that could have been timely raised at the trial and on appeal.

Petitioner, citing *Pineda* v. *Craven* (9th Cir. 1970) 424 F.2d 369, contends that since counsel's affidavit indicates that the failure to raise the *Miranda* objection at the trial was not a strategic or tactical decision, he is entitled to raise the matter by habeas corpus. *Pineda* held that a Fourth Amendment claim not raised at trial or on appeal in the California courts, could be raised on federal habeas corpus, stating at page 371: "At the time Pineda pursued and exhausted his state remedies, the California rule was that the failure of a defendant to raise the question of the legality of the search and seizure before judgment had been entered foreclosed the issue on both direct and collateral attack, unless the objection could have been sustained only by reference to cases yet to be determined at the time of trial. (People v. Pineda (1967) 253 Cal.App.2d 443, 62 Cal.Rptr. 144.) That California contemporaneous objection rule is a 'procedural' rule (Henry v. Mississippi (1965) 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408), and, as such, it will not be considered as a state ground adequate to foreclose review of the

Fourth Amendment claim on federal habeas (Fay v. Noia (1963) 372 U.S. 391, 398-399, 83 S.Ct. 822, 9 L.Ed.2d 837). Kaufman v. United States (1969) 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227, underlined that, *for this purpose, no distinction can be drawn between claimed violations of rights secured by the Fourth Amendment and those secured by the Fifth and Sixth Amendments.* (Cf. Warden, Md. Penitentiary v. Hayden (1967) 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Henry v. Mississippi, *supra.*)" (Italics supplied.)

The court then held that trial counsel's failure to object did not preclude a federal habeas corpus unless the failure was a deliberate bypass or waiver based on a tactical decision. In finding that the failure of Pineda's counsel to object was not based on a strategic or tactical decision, the court relied on a subsequently executed affidavit indicating that at the time of trial, defense counsel believed that there was no defense to the search warrant as he did not know about *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and did not anticipate *People* v. *West,* 237 Cal.App.2d 801 [47 Cal.Rptr. 341]. The court said at page 372: "There is nothing strategic or tactical about ignorance, and neither a deliberate bypass nor a waiver could be based on such evidence, even if it were introduced by way of testimony at an evidentiary hearing. (Newhouse v. Misterly (9th Cir. 1969) 415 F.2d 514; cf. United States ex rel. Henderson v. Brierley (E.D.Pa. 1969) 300 F.Supp. 638.) He is entitled to his evidentiary hearing on remand to the district court." On denying a petition for a rehearing, the court distinguished *Kuhl* v. *United States* (9th Cir. 1966) 370 F.2d 20, where a waiver had occurred as trial counsel had deliberately refrained from asking the trial court to decide the existence of the right allegedly waived which was founded on a disputed question of law.

Petitioner here argues that since the affidavit of his trial counsel is similar to that in *Pineda,* he has established that he is entitled to the writ. We do not agree. The affidavit here (set forth in full in the footnote below)[3] merely

---

[3]"ALLEN J. BOLLHOFFER, hereby declares and deposes:

"That he was the attorney who represented the appellant at trial in the instant case.

"That during the course of said trial, he had the opportunity to cross-examine CAPTAIN C. M. HOWARD of the Mendocino County Sheriff's Department, and to object to any statements he made during his testimony.

"That during said trial, CAPTAIN HOWARD testified that during an interrogation of appellant he offered a written form to appellant and requested him to sign it and thereby waive his rights pursuant to *Miranda,* and that appellant refused to sign it. That affiant was not aware prior to the trial that any form was used during the interrogation of appellant, and that only upon reading the transcript of the trial proceedings was he cognizant of the fact that the form actually was a written waiver of *Miranda* rights. That had he realized such a written waiver were used by CAPTAIN HOWARD, he would have objected to CAPTAIN HOWARD's testimony of any further statements by appellant on the grounds that appellant wished to exercise his Fifth Amendment Right to Remain Silent. That affiant's failure to object to the statements of appellant

indicates that trial counsel did not raise the *Miranda* objection at the trial because of a mistake of fact, namely, he was not aware, prior to the trial, that the form petitioner refused to sign was a written waiver of his *Miranda* rights. This mistake of fact, however, is relatively minor and insignificant. As a waiver of *Miranda* rights or an assertion thereof need not be in writing, defense counsel at the time of his examination of Captain Howard was well aware that any statement made by petitioner while in custody could be subject to *Miranda* objection. Even if he was ignorant of *Miranda* or had temporarily forgotten it, Captain Howard's statement that petitioner was in custody and had been advised of his *Miranda* rights would necessarily bring the proper objection to the mind of counsel. Thus, it appears that defense counsel's failure to object was more akin to a deliberate tactical maneuver, constituting a waiver (*Kuhl* v. *United States, supra*) than the situation presented by *Pineda*.

 However, even assuming that the affidavit set forth sufficient grounds, namely, trial counsel's ignorance of the availability of the *Miranda* objection, a serious question is presented as to *whether a remedy by state habeas corpus* should be made available to petitioner for a matter that could have been raised at the trial and preserved for appeal by a proper objection.

*Pineda* clearly indicates that federal habeas corpus would be available for a violation of petitioner's Fifth Amendment right as the court indicated that for the purposes of relief, no distinctions would be made between Fourth, Fifth and Sixth Amendment rights (*Pineda* v. *Craven, supra*, p. 371, quoted at pp. 728, 729 above). Generally, the availability of a federal remedy for collateral attack makes it pointless for a state court to refuse one (*In re Spencer, supra*).

 However, as noted in *In re Sterling,* 63 Cal.2d 486 [47 Cal.Rptr. 205, 407 P.2d 5], wherein our Supreme Court held that habeas corpus was not available to raise questions of unlawful search and seizure, at page 488: "We fully recognize this state's obligation to afford every defendant a full and fair opportunity to secure an adjudication of all claimed deprivations of his constitutional rights in the securing of the evidence offered against him at trial. We believe, however, that in the absence of extraordinary circumstances, the time and place to secure such an adjudication is at the trial and on appeal. Unless these direct remedies were inadequate for reasons for which the defendant was not responsible (see *In re Spencer* (1965) *ante,* pp. 400, 406 [46 Cal.Rptr. 753, 406 P.2d 33]), we see no

---

testified to by CAPTAIN HOWARD was not a tactical decision, but a misunderstanding of the facts testified to at trial. That only after affiant had made a motion for a new trial did he receive a transcript of the trial proceedings."

basis for affording him an opportunity to relitigate an alleged violation of such constitutional rights of collateral attack in the state courts."

 Thus, here, as in *In re Sterling, supra,* the authorization of a state remedy would result only in needless repetition and delay. As stated in *Sterling, supra,* at page 489: "Preservation of a defendant's constitutional rights lies not in multiple state remedies that will ordinarily produce the same result, but in one effective state remedy plus an awareness on the part of all state officials that ultimate federal review is available. We expedite the availability of that federal remedy by the compilation of a full and adequate record and by insisting that one state remedy is ordinarily enough."

The petition for writ of habeas corpus is denied.

Shoemaker, P. J., and Agee, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 17, 1971.