**STATE of Missouri, Respondent,**

v.

**Martin William MONTEER, Appellant.**

**No. 55378.**

Supreme Court of Missouri,
En Banc.

April 12, 1971.

Rehearing Denied May 10, 1971.

iff of Pettis County arrived at the scene. He was told by Monteer that he had been in the car that was wrecked with two other persons, that he had been shot at and wanted to give up and that he had been with them earlier that day in Saline County when they held up a service station.

At around 5:00 P.M. on June 5, the sheriff of Saline County took Monteer into custody and drove him to Marshall. There he was interrogated by the prosecuting attorney and admitted his participation in the robbery.

At the trial before a jury, Miss Cunningham identified appellant as one of the robbers. The sheriff of Saline County testified to the statement of the appellant in which he admitted participation. Appellant testified in his own behalf that, although he had been in the service station at Marshall Junction earlier on the day of the robbery, he took no part in any holdup and was playing pool at Otterville in the afternoon of the crime. He testified that he told Sheriff Fairfax of Pettis County that he had been forced to assist in the crime because inmates at the jail in Sedalia had convinced him that he would be "let off" on such a story.

The jury found Monteer guilty and fixed his punishment at five years' imprisonment.

On this appeal, the only question presented is whether or not the trial court erred in admitting into evidence testimony concerning the statement which he made to the prosecuting attorney of Saline County in the presence of the sheriff who testified on the statement.

Appellant's counsel objected to any testimony concerning the statement on the grounds that the defendant was not afforded sufficient warning of his right to remain silent and to have counsel present and other guaranties given him under the law. He also objected that any statement was the product of harassment and intimidation by police and therefore was not voluntary.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Donald S. Huff, Marshall, Forrest P. Carson, Jefferson City, for appellant.

WELBORN, Commissioner.

Appeal from five-year sentence for robbery in the first degree.

At around 2:30 P.M. on June 4, 1969, three men entered a service station and grocery at Marshall Junction in Saline County. After making some purchases, one of the men drew a knife on the co-owner, Dorothy Cunningham, and said, "This is it, this is a stick-up. We want your money." The robber took twenty-one to twenty-five dollars in cash and four to six pairs of sunglasses and left in a '65 or '66 Ford with Kansas license plates.

At around 7:00 P.M. on June 4, 1969, appellant Martin William Monteer was taken into custody after a red 1966 Ford, pursued by highway patrolmen, ran into a ditch in Pettis County. Two other men fled from the wrecked vehicle. The sher-

Sheriff Hoff of Saline County and Sheriff Fairfax of Pettis County testified at the hearing on the statement, conducted out of the presence of the jury.

Sheriff Fairfax testified that he placed appellant under arrest at about 7:00 P.M. on June 4, 1969, at the Skinner farm southeast of Smithton in Pettis County. He left Monteer in the custody of other law enforcement officers at the scene and searched for the other two occupants of the wrecked Ford. After about an hour, he returned to the farm, took Monteer in his car and read to him a card which stated:

" 'You have the right to remain silent.

"(Reading) '2. Anything you say can and will be used against you in a court of law. ·

'3. You have the right to talk to a lawyer and have him present with you while you are being questioned.

'4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one.

'Do you understand each of these rights I have explained to you?' and, 'Having these rights in mind, do you wish to talk to us now?' "

After the card had been read, Monteer stated that he was ready to talk and told the sheriff that he had participated in the robbery of a service station in Saline County earlier in the day.

Sheriff Hoff testified that before the questioning of Monteer when he was returned to Saline County, Monteer was presented with a paper containing the following:

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one.

"If you desire to answer questions, now, without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

"The waiver of rights, I have read this statement of my rights and understand what my rights are. I'm willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No pressure or threats have been made to me and no— excuse my reading—no promises or threats have been made me and no coercion of any kind has been made against me."

The paper was read to and signed by Monteer and the interrogation proceeded, resulting in the statement to which the sheriff testified at the trial.

Monteer testified at the hearing on the statement. He testified that no warning was read to him while he was in custody in Pettis County. He testified that, as they were riding in the sheriff's auto, the sheriff was interrogating him about the robbery of a place in Saline County. After the sheriff told him that he had better get his story straight, a deputy riding in the back seat hit him in the head with a blackjack and Fairfax hit him in the ribs with his fist when he raised his hands to ward off the blackjack. Monteer testified that after that experience he told the officers that he had been forced to participate in the Saline County robbery.

Monteer testified that he believed he was read the statement of his rights and that he signed the document in Saline County without bothering to reread it. He said that he was "scared from being shot at and everything else. I was really shook up." (Shots had struck the Ford in the pursuit prior to its going into the ditch.) Monteer testified that Saline County of-

ficials kept questioning him and he was sick and got tired of it and "wasn't sleep- or nothing," so he told his questioners that he was forced to participate in the robbery, but the statement wasn't true.

After the hearing, the judge made the following findings:

"My findings will be the same on the statement given to Sheriff Fairfax of Pettis County, on June 4, and the statement given to Sheriff Hoff and the Deputy Sheriff, in the presence of the Prosecuting Attorney of Saline County, on June 5.

"The Court finds the two statements in question were voluntarily made by the defendant; were not procured by coercion or threats or through fear, and were not induced by promises of leniency; and I find that the statements in question are competent evidence and, therefore, I overrule the defendant's objections to the statements and admit the statements in evidence."

The primary thrust of appellant's contention here is that the trial court failed to make an express finding on the issue of whether Miranda warnings had been given prior to police interrogation. He contends that once the issue is raised and a factual dispute arises as to whether the warnings had either been given or had been waived, the trial court is required to make an express finding on the issue before allowing the statement to go to the jury.

Appellant has cited none of the numerous federal and state cases in which the question that he here raises has been considered.

Prior to the decision of the United States Supreme Court in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, there was no requirement in this state that the trial court make express findings upon the voluntariness of a confession. If the court considered the confession voluntary, it overruled objection to its admission and then let the confession go to the jury which also considered the question of voluntariness if the issue was renewed before the jury.

Jackson v. Denno laid down the rules governing procedure for determination of the voluntariness of confessions. It required a reliable and clear-cut determination of the voluntariness of a confession before submission of the confession to a jury which is considering the guilt of the defendant. The court noted in Jackson v. Denno, supra, 378 U.S. 378, fn. 8, 84 S.Ct. at 1781, that in jurisdictions following the Massachusetts rule, "the record will show the judge's conclusion in this regard (voluntariness) and his findings upon the underlying facts may be express or ascertainable from the record." In Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, the court stated the duty of the trial court as follows: "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity."

In order to assure that the rule laid down in Jackson v. Denno, supra, was followed by the trial courts, this Court, on several occasions, has remanded to the circuit court the question for explicit statement of the judge's determination of the voluntariness of the confession. State v. Glenn, Mo. Sup., 429 S.W.2d 225, 237–239 [29]–[31]; State v. Edwards, Mo.Sup., 435 S.W.2d 1, 5 [5]; State v. Auger, Mo.Sup., 434 S.W. 2d 1, 6–7 [9]; (see Auger v. Swenson, U.S.D.C., W.D., Mo., 302 F.Supp. 1131); State v. Taggert, Mo.Sup., 443 S.W.2d 168; State v. Devoe, Mo.Sup., 430 S.W.2d 164. None of those cases considered what specific findings were necessary in order to meet the requirements of Jackson v. Denno, supra. The finding upon remand that the statement was "voluntary" was accepted without any contention that more explicit findings were required. The question of Miranda warnings was not involved in Edwards and Glenn. No express findings as to Miranda warnings appeared in the trial court's order on remand in Auger

and Taggert. Only in Devoe did the trial court make an express finding beyond the conclusion that the confession was voluntary. In Devoe, the court further found that the defendant had knowingly and intelligently waived his privilege against self-incrimination and right to counsel. 430 S.W.2d 166.

The state here relies upon United States v. Read (1969), 9th Cir., 411 F.2d 582. In Read the question of successive interrogations was also involved, but the court found that the basic factual issue was whether or not the required warnings had been given prior to the first interrogation. The defendant testified they had not. Government witnesses testified they had. The trial court made no specific finding on the issue, but did overrule the motion to suppress the statement. In affirming, the court stated (411 F.2d 583):

"A defendant challenging the admissibility of a confession in the trial court has a right to 'the resolution of disputed facts upon which the voluntariness issue may depend.' Jackson v. Denno, 378 U.S. 368, 391, 84 S.Ct. 1774, 1788, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964). This is equally true where the issue is waiver. Thus, it is always advisable for the trial court to make explicit findings reflecting the specific facts upon which the trial court relies in determining the admissibility of a confession or the waiver of rights. Such findings are invariably helpful on appellate review. Their omission may compel reversal or remand. E. g., Camacho v. United States, 392 F.2d 575 (9th Cir. 1968). See also Jackson v. Denno, *supra,* 378 U.S. at 378 n. 8, 390–391, 84 S.Ct. 1774; Javor v. United States, 403 F.2d 507, 509–511 (9th Cir. 1968); Evans v. United States, *supra,* 375 F.2d 355 at 359–360 (8 Cir.); Hutcherson v. United States, 122 U.S.App.D.C. 51, 351 F.2d 748, 755 (1965). At a minimum, the trial court's findings on essential factual issues must, in the language of Jackson v. Denno, supra, 378 U.S. at 378 n. 8, 84 S.Ct. 1774, be 'ascertainable from the record.'

"[1] In this case we think it is clear from the record that the essential specific finding was necessarily implicit in the trial court's general finding that the evidence did not support defendant's allegations and that the second confession was freely and voluntarily given. The trial court clearly understood defendant's first ground and clearly rejected it; and, as noted, as presented to the trial court this ground rested entirely upon the single simple issue of fact in question. We note that defendant has not argued to the contrary on appeal. Indeed, defendant has not contended in this court that the motion to suppress should have been granted on the *Westover* ground.

"The second ground asserted by defendant in support of his motion involved conflicting testimony as to his emotional and physical condition at the time the confessions were taken. Again, though specific factual findings should have been made, we are satisfied from the record that the trial court's general finding necessarily required a consideration of the factual conflicts and their resolution against defendant's position. See Boulden v. Holman, 394 U.S. 478, 479, n. 1, 89 S. Ct. 1138, 1139, 22 L.Ed.2d 433 (1969)."

The content of the trial court's finding does not appear in Camacho v. United States, supra. However, in remanding the matter, the court of appeals' direction was (392 F.2d 576):

"The cause is remanded for the district court to make and file as part of the record on appeal a statement of the specific facts found upon the evidence and record presented in the suppression hearing and the particular principles of law applied thereto in the suppression ruling. The statement of the district court should include findings: whether warnings of appellant's constitutional rights were given to him, and, if so, the time, maker and content of each such warning; all statements of and to appellant considered pertinent to the suppression ruling; whether appellant requested counsel and, if

so, the time and content of each such request and to whom it was made. The fact findings should be stated in the sequence and context in which they occurred."

Javor v. United States, supra, was a case in which no findings were made. In addition, the trial court appeared to follow the New York rule rather than the rule laid down in Jackson v. Denno, supra.

In Evans v. United States (1967), 8th Cir., 375 F.2d 355, the court reviewed the admissibility of a confession which had been objected to because of failure to observe Miranda. The confession involved had been made to a federal officer after full Miranda warnings, but had been preceded by interrogation by a state officer and inculpatory statements in response to such interrogation, without the required advice as to constitutional rights. The trial court held the confession admissible, stating that the federal officer had advised the defendant of his rights and what had been told the state officer had nothing to do with it. The circuit court of appeals found the confession involuntary as a matter of law and also expressed doubt that the "[trial] court's limited finding in regard to the issue of voluntariness meets the test promulgated in Jackson v. Denno," 375 F.2d 359. The court stated (375 F.2d 360 [7]):

"In summary, the district court was required to make a finding on the record with 'unmistakable clarity' that (1) the *Miranda* warnings were given; (2) the defendant knowingly and intelligently waived his privilege against self-incrimination (see 384 U.S. at 475, 86 S.Ct. 1602); (3) the defendant voluntarily, knowingly and intelligently waived his right to have retained or appointed counsel present at the interrogation; (4) the confession or statement was freely and voluntarily made."

However, the basic difficulty with the judgment of the trial court in Evans was that the evidence did not support a finding that the confession was voluntary and the conviction was reversed on that account.

In Hutcherson, supra, the court in passing upon the admissibility of a confession became involved in the truth or falsity of the confession. The trial court did not instruct the jury as to its responsibility with regard to the confession. The conviction was reversed, with direction to determine the voluntariness issue under Jackson v. Denno standards prior to retrial. In discussing the practice to be followed in connection with the determination by the court of the voluntariness question, the court of appeals noted the requirement of Jackson that the record show the trial judge's conclusion and remarked: "The better practice argues in favor of express findings." 351 F.2d 755 [12].

The state also relies on the case of People v. Daniels, 1 Cal.App.3d 367, 81 Cal. Rptr. 675. The court in that case held that an express finding on Miranda warnings and voluntariness is not necessary as "such findings will be implied from the court's order admitting the confession into evidence." 81 Cal.Rptr. 679. The court repeats an earlier suggestion, made in People v. Smith, 270 Cal.App.2d 715, 76 Cal.Rptr. 53, that "as a matter of practice such findings ought to be made in order to eliminate any doubt that the trial court passed on those issues." Id., footnote 2. See also Hill v. State, Tex.Cr.App., 429 S.W.2d 481, U.S. Cert. Denied, 393 U.S. 955, 89 S.Ct. 384, 21 L.Ed.2d 367 (November 18, 1968).

The rule in the California court does not accord with this Court's procedure in the Glenn, Edwards and Auger cases, supra. See also Murphy v. State, 8 Md.App. 430, 260 A.2d 357; Lynch v. State, 9 Md.App. 441, 265 A.2d 283.

 The basic requirement of Jackson v. Denno and Sims v. Georgia, supra, is that the trial court show on the record that he made the requisite determination that the confession was voluntary before permitting it to be considered by the jury. There is no doubt that such finding was made here. More explicit findings, such as called for in Edwards, supra, might be

beneficial upon subsequent review, but the United States Supreme Court has required only that factual findings upon which the trial court's ultimate conclusion of voluntariness is based be "ascertainable from the record." In this case, there was a conflict in testimony of the accused and Sheriff Fairfax as to whether or not Miranda warnings had been given prior to his questioning of the defendant. Just as in United States v. Read, supra, the court's finding that both the statement to Fairfax and the statement to Saline County authorities were voluntary necessarily implied the finding that the defendant's version was rejected. No real dispute exists concerning what happened in Saline County as to the Miranda warnings. Again, implicit in the court's finding is the court's rejection of defendant's testimony that he paid no attention to what he signed.

Appellant does not question the absence of specific findings on other matters argued on this appeal. He does contend that defendant's statement that he was questioned between Sedalia and Marshall while in Sheriff Hoff's auto showed questioning by that officer prior to receiving Miranda warnings. However, the sheriff testified that no questions were asked on the trip to Marshall. Likewise, defendant testified that he was afraid of Sheriff Hoff and Deputy Prior who were present at the Saline County questioning. However, there was no evidence that those officers had in any way threatened the defendant. Appellant also argues that there could have been no valid warning of constitutional rights because of defendant's testimony that he was sick and tired from lack of sleep. Sheriff Hoff testified that he observed nothing unusual about the defendant's physical condition and defendant made no complaint. Defendant was not subjected to protracted questioning which deprived him of sleep.

These matters were all before the trial court and the trial court resolved the evidentiary conflicts against the defendant and concluded that the confession was vol-

untary. We find no reason to disagree with such conclusion.

Judgment affirmed.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All concur except SEILER, P. J., who dissents in separate dissenting opinion filed.

SEILER, Presiding Judge (dissenting).

I would remand this case for specific findings by the trial court on whether the Miranda warnings were given, and, if they were, whether defendant knowingly and intelligently waived his privilege against self-incrimination and his right to have retained or appointed counsel present at the interrogation. I agree the trial court's findings could be taken as meaning the trial court accepted as true all the officers said and rejected as untrue all the defendant said. The trial court's findings can also be taken, however, as limited to finding there were no threats, coercion, or promises of leniency, and that the statements were accordingly voluntary. I do not believe Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, are authority for holding the findings in the case before us show with "unmistakable clarity" what the court's conclusions were on the several issues which were before it. Jackson v. Denno preceded Miranda and involved a confession allegedly made while defendant was under medication and suffering from shock and loss of blood. Sims v. Georgia was after Miranda, but it, too, involved a confession allegedly obtained by physical coercion. Neither case involved determination by the trial court of a compliance with the Miranda warning. In other words, the issues in those cases were narrower, and what would have been sufficient there to satisfy "unmistakable clarity" does not mean the finding in the present case is sufficient. I see nothing to be gained by leaving the issue in doubt and believe we should make it clear, if it has not already been done,

that in cases such as this the trial courts should, as declared in Evans v. United States (C.C.A. 8) 375 F.2d 355, make specific findings as to whether (1) the Miranda warnings were given; (2) the defendant knowingly and intelligently waived his privilege against self-incrimination, and (3) voluntarily, knowingly and intelligently waived his right to have retained or appointed counsel present at his investigation.