[Crim. No. 1284. Third Appellate District.—September 19, 1933.]

THE PEOPLE, Respondent, v. LOYD MELLUS, Appellant.

J. N. DeMeo and S. K. McMullin for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—This is an appeal by the defendant from a judgment of conviction based upon an information filed in the Superior Court of the County of Sonoma, by the district attorney, on the twenty-fourth day of March, 1933, and from the order of the court denying his motion for a new trial. Two sentences were imposed upon the appellant, running consecutively. The information is in two counts, to wit: Count one charges that the defendant, on or about the nineteenth day of February, 1933, in the county of Sonoma, wilfully and feloniously stole certain chickens belonging to one Fred Martin. Count two charges that the defendant on or about the nineteenth day of February, 1933, in the county of Sonoma, wilfully and feloniously stole certain chickens belonging to one F. W. Collings. The information also charged that the defendant had suffered a prior conviction for the crime of burglary committed in the state of Nevada, and had served a term of imprisonment therefor in the penitentiary of said state. The defendant pleaded guilty to the prior conviction, and not guilty to the two counts set forth in the complaint.

Upon this appeal no contention is made that the testimony is not sufficient to support the verdict of the jury as to count one. The specifications of error present two questions: The alleged error of the court in admitting the confession of the appellant where the prosecution had failed to establish the *corpus delicti* as to the second count; and alleged error of the court in holding that the confession of the appellant was free and voluntary.

The alleged error of the court as to the admission of the confession of the appellant is directed to the first count,

without any discussion or reference to the testimony showing commission of the offense charged in said count, or questioning the sufficiency thereof, as we have said, to support the verdict of the jury. Nor is there any argument presented that the alleged error of the court in admitting the confession of the appellant resulted in a miscarriage of justice in so far as the verdict based upon the first count of the information is concerned.

A reading of the testimony convinces us that any error of the court in admitting the confession of the appellant could not have, and did not result in any miscarriage of justice in finding the defendant guilty as charged in the first count. The testimony shows that on the nineteenth day of February, 1933, someone with an automobile visited the premises of Fred Martin, and took therefrom a number of chickens. Automobile marks were made by the conveyance in which the chickens were transported from the premises just named, leading toward a certain building in which a man by the name of John Belluomini conducted a business of buying chickens. At about 9:30 the same night a coop containing the chickens was placed by the defendant on the rear platform of the building just referred to. A witness who lived in the vicinity of the building where Belluomini conducted his business was attracted to the scene, and then and there saw the defendant place the coop of chickens on the platform just mentioned. This witness stated that he had a good look at the defendant who, in the course of his operations, stepped immediately in front of the lights burning on his automobile. An examination of the chickens revealed that aluminum bands had been placed upon the legs of some of the chickens and stamped with the numbers used by Mr. Martin to identify his poultry. The witness Martin identified the chickens as belonging to him, and which were taken on the night of February 19th. On the morning of February 20th the appellant went to the premises where Belluomini conducted his business, sold the chickens to Belluomini and received payment therefor. No explanation whatever was offered by the defendant, other than the confession, to which we will hereinafter refer, as to the possession of the chickens, how he obtained possession thereof or why he was making sale of the same. These facts show beyond any reasonable doubt, and practically beyond any pos-

sibility of question, the guilt of the appellant, and under the provisions of section 4½ of article VI of the Constitution, it must be held that conviction properly followed the testimony introduced in support of the first count, irrespective of any alleged error of the court in the admission of the defendant's confession, and consequently there has been no miscarriage of justice.

The second count of the complaint charges, as stated, the stealing of chickens belonging to one F. W. Collings. The testimony in support of this count is to the effect that about 8:30 on the evening of February 19, 1933, F. W. Collings heard a buzzer ring which he had attached to the gate through which entrance is made to his chicken-houses. That on the eighteenth day of February he had counted his chickens, and at that time had either 122 or 123. On the morning of the 20th of February his chickens were again counted and he was able to count only 98 or 99. There were some foot-tracks in the vicinity of the gate leading to his chicken-houses. No testimony has been called to our attention, however, that these tracks corresponded in size to the shoes worn by the appellant. F. W. Collings stated on the witness-stand that he could not identify any of the chickens sold by the appellant to Belluomini, as chickens belonging to him. The chickens bore no identifying marks.

The testimony as to the second count may be summarized in the following statement: F. W. Collings lost some 25 chickens on the night of February 19, 1933. On February 19th the appellant was seen leaving a chicken coop on the rear platform of the premises belonging to Belluomini, and on the morning of February 20th sold a coop of chickens to Belluomini and received payment therefor. Whether the chickens sold by the appellant to Belluomini were chickens taken from or belonging to F. W. Collings is left wholly unanswered.

Basing his argument on the testimony to which we have referred the appellant contends that the *corpus delicti* of the alleged offense is not established. While a strong probability is raised that some of the chickens sold by the appellant to Belluomini were chickens belonging to F. W. Collings, there is not sufficient proof to establish such fact, without recourse to the confession of the appellant. However, by reason of what we are about to state it is not necessary to base our

decision upon the insufficiency of the testimony to establish the *corpus delicti* of the offense charged.

 The record shows that during the course of the trial the confession of the appellant was presented in testimony. The contention made here is that the confession was not freely and voluntarily made by the appellant, but was superinduced by coercion and threats, and that the court erred in admitting the confession. This contention of the appellant appears to be well taken. We quote from the record as follows (beginning with the statement of the district attorney), to wit: "Q. I thought I would come in and talk to you, something about the chicken business in Petaluma, and your delivery of them to the Commonwealth Company. Of course anything you say now may be used against you later, and all statements made by you are free and voluntary on your part. You understand that, of course? A. Yes, sir." (There were also present at the same time the sheriff and a shorthand reporter.) "Q. You called at the house and went down and delivered the chickens to the Commonwealth Company; took them out and put them in the coops? A. Yes, right. Q. Where did you get those chickens from? A. You told me not to answer any questions if I didn't want to, didn't you? Q. Is that the position you want to take? A. Not necessarily, no. Q. Do you want to tell the sheriff the truth about it—because we know anyway. If you want to come clean on it, that is one thing; if you don't, that is all right. Your mother has told us practically everything. In fact, we have implicated her in it. The question is, do you want to come clean on it yourself and exonerate her, or are we going to hold both of you? A. What have you got to hold her on? Q. She was with you on the two occasions, and about two or three weeks ago you delivered some chickens there in the morning between 10 and 12 o'clock, didn't you? (By the sheriff): Q. The thing is this, Loyd: Here we find the chickens there; find your mother delivering them; and we have got your mother here. A. What have you got her for? Q. She delivered those chickens; she was with you, was she not, when you got them? That is the thing we want to know. We are entitled to the truth about it here to see whether we shall hold her or not. A. Certainly. Q. She was with you when you delivered them last night; with you when you got the money today; with you a couple of weeks

ago when you delivered chickens out there; and we naturally presume she was with you when you got the chickens? A. What made you think she was with me when we got the chickens? Q. Because I find the imprints of a lady's shoes, either hers or some other woman's. The presumption is that she goes with you when the chickens were delivered, on the occasion when they were delivered; she was the one that was with you when you took them out of the house, and we are going to hold her until we find out differently."

The testimony of the sheriff relative to what took place before the defendant made his confession is as follows: "Q. At that time did Mr. Mellus deny the commission of the particular offense? A. Yes, he did. Q. Thereafter, after the defendant had denied the offense, did he say, 'I have nothing to say?' A. He may have said that; I am not so sure about that. Q. And thereafter, when he said, 'I have nothing to say,' did you say, 'then as long as you have nothing to say we will have to lock your mother up'. Did you state that? A. Yes, I might have said, 'if you don't tell just what happened, I will have to hold your mother, because your mother was with you when you delivered these chickens.' Q. You stated that to him? A. Yes; I may have said that; I believe I did say that. Q. Now, thereafter did the defendant admit the perpetration of the offense charged? A. Yes, he did. Q. And he did not admit it prior to making the statement that you would lock his mother up? A. No, I don't believe he did."

As stated in 8 California Jurisprudence, page 111: "It is established law that a confession is not rendered involuntary or inadmissible in evidence merely because it was made to a police officer while the accused was under arrest, or because the defendant was not at the time in full possession of his faculties, or was under a state of great excitement, or because he made it to free another from suspicion or guilt." The following is also set forth as a rule of law: "However, the slightest pressure, whether by way of inducement to confess, or threat if confession is withheld, is sufficient to require the exclusion of the confession." And further: "Upon the other hand a confession is not rendered involuntary because it is preceded by a statement that a confession would relieve the defendant's mind, or by an admission to tell the truth, or by a statement of an officer that he has sufficient evidence to

convict the defendant, and the latter ought to tell the truth when there is nothing to indicate in any way that it was coupled with a threat, or that it was to be, or was regarded as a promise.'' Here, there can be little question but that the sheriff threatened the defendant that he would lock his mother up, and the promise to let the mother go free if he made a confession is certainly to be implied from the testimony quoted.

The following taken from the opinion in the case of *People* v. *Siemsen*, 153 Cal. 387, page 394 [95 Pac. 863], we think applicable to this case: ''Before any confession of a defendant can be offered in evidence, it must be shown by the prosecution that it was voluntary, and made without any previous inducement, or by reason of any intimidation or threat. The slightest pressure, whether by way of inducement to confess, or threat if confession is withheld, is sufficient to require the exclusion of the confession. Thus, the confession is not admissible if made in response to a statement by one in authority to the prisoner, that 'it will be better for him' to make a full disclosure.'' (Citing a number of cases.) ''But whether a confession is free and voluntary is a preliminary question addressed to the trial court and to be determined by it (*People* v. *Miller*, 135 Cal. 69 [67 Pac. 12]), and a considerable measure of discretion must be allowed that court in determining it. The admissibility of such evidence so largely depends upon the special circumstances connected with the confession that it is difficult, if not impossible, to formulate a rule that will comprehend all cases. As the question is necessarily addressed, in the first instance, to the judge, and since his discretion must be controlled by all the attendant circumstances, the courts have wisely forborne to mark with absolute precision the limits of admission and exclusion.''

Much consideration must be given to the determination of the trial court from the attendant circumstances, that the confession is voluntary, yet on the other hand if it satisfactorily appears, as it does in this case, that the sheriff had stated that if the defendant did not tell all about what took place, he would have to lock up the mother of the defendant, so clearly and convincingly appears from the record that we cannot escape the conclusion that the court erred in the admission of the confession of the appellant. We cannot over-

look the natural ties of affection which would induce almost anyone to shoulder all the burden attendant upon the commission of any offense in order to relieve his mother from being confined in a prisoner's cell on a charge of theft. The threat in this case is plain and explicit. That the prisoner was told that he need not talk unless he so desired becomes immaterial in the face of the threat made by the officer preceding the appellant's confession.

Disregarding the appellant's confession there is not sufficient testimony in the record to support a verdict of guilty of the offense charged in the second count in the information. Under these circumstances, do the provisions of section 4½ of article VI of the Constitution apply? We think not. In this instance it is not a question of whether the defendant is or is not guilty of the offense charged in the second count contained in the information. The phrase "miscarriage of justice", as said in substance in the case of *People* v. *Wilson,* 23 Cal. App. 513 [138 Pac. 971], "does not merely mean that a guilty man has escaped or that an innocent man has been convicted. It is equally applicable to cases where the acquittal or conviction has resulted from some form of trial in which the essential rights of the People or of the defendant were disregarded or denied. The right of the accused, in a given case, to a fair trial, conducted substantially according to law, is at the same time the right of all inhabitants of the country to protection against procedure which might at some time deprive them of life or liberty. It is an essential part of justice that the question of guilt or innocence shall be determined by an orderly legal procedure in which the substantial rights belonging to the defendant shall be respected."

In the instant case, without the confession of the appellant, the testimony did not warrant a conviction of the appellant on the charge contained in the second count. If the confession were erroneously admitted, it follows that a conviction has been had upon testimony that should not have been admitted for consideration by the jury. This constitutes a miscarriage of justice, because unless an offense is legally proven against the defendant, the People cannot justly demand conviction. An illegal conviction or a conviction based upon inadmissible testimony is in law a miscarriage of justice.

It follows from what we have stated that the order and judgment of the trial court, in so far as the second count in the information is concerned, must be and the same are hereby reversed. It likewise follows that the judgment and order of the trial court as to the first count contained in the complaint must be and the same are hereby affirmed.

Thompson, J., and Pullen, P. J., concurred.