[Crim. No. 7892.    Second Dist., Div. Three.    Apr. 23, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. SIDNEY GENE RAND, Defendant and Appellant.

Harry E. Weiss for Defendant and Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—By an information the defendant was accused of the crime of possession of marijuana in violation of section 11530 of the Health and Safety Code. He waived his right to trial by jury. It was stipulated that the case would be submitted on the evidence received at the time of the preliminary hearing, with the right reserved to the People and the defendant to offer additional evidence. The defendant was found guilty as charged. He has appealed from the judgment.

While the defendant presents a number of contentions, it is only necessary to discuss one since it is determinative of this appeal. That contention is that the court erred in receiving in evidence a statement made by the defendant at the place of his arrest because such statement was not voluntary.

Only two witnesses testified, Deputy Sheriff Tizenor and the defendant. By stipulation, the necessity for the testimony of a forensic chemist as to the narcotic nature of the articles hereinafter mentioned was dispensed with. A résumé of the pertinent testimony will be given.

On May 24, 1960, Officer Tizenor, together with four other officers, had the apartment building where the defendant resided under observation for about two hours. During that time he saw about 25 or 30 persons enter the defendant's apartment, each remaining for a short period of time and then leaving. The officers had no search warrant and no warrant for the arrest of anyone. After such surveillance, Officer Tizenor knocked on the defendant's door. The defendant opened the door. Thereupon the officer displayed his identification card and badge and stated that he was a police officer and would like to talk to the defendant. The latter "stepped back from the door, pulled the door wide open, and stated, 'Come in.' " The officer entered the room and observed what appeared to be a portion of a marijuana cigarette in an ash tray. The defendant was then placed under arrest and the bedroom of the apartment was searched. In a jewel box on a stand next to the bed was found a cigarette package containing "thirty-five brown paper-wrapped cigarettes, which appeared to be marijuana." In the presence of several of the

other officers the witness asked the defendant if all of the cigarettes belonged to him and the defendant said that they did. Later, at the Firestone Sheriff's Station, the defendant made substantially the same statement.

With respect to the statement made by the defendant in the apartment, on cross-examination Officer Tizenor testified in part as follows: "Q. Now prior to the time that you had a conversation with him, you said you were going to arrest his wife and take his children down and put them in juvenile, didn't you? A. I possibly made that statement, yes, sir. Q. Did you make that statement? A. I don't recall whether I did or not. . . . Q. Now you had a conversation with the defendant at the apartment where he told you that all the cigarettes belonged to him, is that right? A. Yes, sir. Q. Now just prior to the time that he made that statement, did you tell him you were going to arrest his wife? A. Possibly I did. I don't recall for sure. Q. Let me ask you this. Did you tell him that you were going to lock his children up in Juvenile Hall? A. If we took his wife, that's what we'd have to do. Q. Did you tell him you were going to lock his children up in Juvenile Hall? A. I already stated possibly I told him that. I don't recall. . . . Q. Let me ask you this. Didn't you tell him, the defendant, that if he didn't admit that those cigarettes belonged to him that then they must belong to everybody in the family and you are going to take his wife and his children and lock them up also unless he admitted they were his? Did you tell his [sic] that? A. I can't answer that Yes or No. I will explain it if you'd like. Q. Go ahead. A. As I recall, I made the statement to the defendant that if the cigarettes—if he did not know who they belonged to, that we did not know and therefore we would have to take him, his wife to jail. A. [Q.] And his children? Q. [A.] Well, his children would be taken care of by the proper authorities. Q. You told him they'd go to juvenile, didn't you? A. Possibly I did. That's where they would go, anyway. Q. Now after you made this statement to him, then, as a matter of fact, didn't he say to you, 'Well, this is my house and everything in here is mine, so these cigarettes must be mine, too,' isn't this what he said? A. Recalling exactly what the defendant stated in his conversation, was that everything in the house belonged to him. He further stated that—I asked him, 'Well, that is not saying anything about the particular cigarettes.' He then stated that the cigarettes were his. Sergeant Caraway, in my presence, stated to the defendant, 'You are not saying

this just to let your wife stay here, are you?' And he stated No. And he asked him that same question about four different ways and about four different times, and the defendant stated that he was stating they were his because they were his. Q. And because everything in the house was his, isn't that what he stated each time? A. No, sir. Q. . . . After you found these cigarettes, you showed them to him, didn't you? A. He was there when we found them, yes, sir. Q. You showed them to him, didn't you? A. Yes, sir, I imagine he saw them. Q. Well, let me ask you this, officer, so you won't have to imagine. You held them out in front of him, didn't you? A. I did not, no sir. Q. Did anyone hold them out in front of him? A. I observed Sergeant Caraway to point to the cigarette package prior to it being removed from the box and ask the defendant, 'What is that?' Q. At that point he said he didn't know, didn't he? A. That's right. . . . Q. . . . He, at first, said he didn't know what these cigarettes were, didn't he? A. Yes, sir. Q. And he, at first, said they weren't his, isn't that right? A. No, sir. Q. Did you ask him—at the time that he stated he didn't know what they were, did you ask him if they were his at that time? A. Yes. Q. What did he say? A. He stated he didn't know anything about them. . . . Q. . . . Did you tell him, sir, that the children would have to go to juvenile authorities or be taken care of by juvenile authorities? . . . THE WITNESS: As I state, I don't recall saying that. I possibly did. That would be the method of operation, the procedure. THE COURT: Let me ask you this. Would it be a fair statement to say that the defendant told you he didn't know anything about these cigarettes that you found, this thirty-five in this package, until after he had said that everything in the place is mine; and was it after you had said that if they weren't his and they weren't yours, that you would have to take the defendant and his wife to jail? Was it after that statement made by you that he said, 'Well, they are mine,' or something to that effect? Is that what you are trying to find out? MR. RUSSELL [attorney for the defendant] : Yes, your Honor. THE WITNESS: I'd say that was a fair statement of what happened, yes, sir.''

At the trial the defendant's testimony as to his conversation with one of the officers was in part as follows: ''He said, 'I guess we will have to take you and your wife and your children down.' He said, 'Unless you tell me it is yours, we will put your wife and the children in the hands of the au-

thorities.' He said, 'Is it yours?' I said, 'It is mine.' Q. Was the contraband in fact, yours? A. No.''

During the course of the argument after the evidence had been received at the trial, the defendant's attorney stated as follows: ''. . . may I simply point out that the officer's testimony in the transcript corroborates the testimony given by the defendant as to whether or not his wife and children would be taken in, and I think this goes to support the defendant's contention that the admission was not freely and voluntarily given, . . .''[1] The trial judge made no express ruling as to the admissibility of the defendant's statement but stated in substance that he did not entertain any doubt as to the defendant's guilt with respect to the 35 cigarettes.

In *People* v. *Atchley,* 53 Cal.2d 160 [346 P.2d 764], the Supreme Court stated at page 170: ''Involuntary confessions are excluded because they are untrustworthy, because it offends 'the community's sense of fair play and decency' to convict a defendant by evidence extorted from him, and because exclusion serves to discourage the use of physical brutality and other undue pressures in questioning those suspected of crime. (*People* v. *Berve,* 51 Cal.2d 286, 290, 293 [332 P.2d 97]; see *Watts* v. *Indiana,* 338 U.S. 49, 54 [69 S.Ct. 1347, 1357, 93 L.Ed. 1801]; *Lyons* v. *Oklahoma,* 322 U.S. 596, 605 [64 S.Ct. 1208, 88 L.Ed. 1481].) All these reasons for excluding involuntary confessions apply to involuntary admissions as well. (See *Opper* v. *United States,* 348 U.S. 84, 90-92 [75 S.Ct. 158, 99 L.Ed. 101]; Falknor, *The Hearsay Rule and Its Exceptions,* 2 U.C.L.A. L.Rev. 43, 68.) Accordingly, any statement by an accused relative to the offense charged is inadmissible against him if made involuntarily.''

Before the statement of the defendant was admissible, the prosecution had to sustain its burden of proof that it was voluntary. (*People* v. *Berve,* 51 Cal.2d 286, 291 [332 P.2d 97]; *People* v. *Speaks,* 156 Cal.App.2d 25, 36 [319 P.2d 709].) ''The requirement that a confession be voluntary is one of public policy, and it is a fundamental right of the defendant, denial of which is a violation of due process.'' (*People* v. *Kendrick,* 56 Cal.2d 71, 83 [14 Cal.Rptr. 13, 363 P.2d 13].) As has been noted, counsel for the appellant argued the matter of the involuntary character of the de-

---

[1] As set forth in the transcript of the preliminary hearing, after the testimony of Officer Tizenor had been completed the attorney for the defendant made a motion to strike ''the statements of the defendant in the first and second conversation as they weren't freely and voluntarily made.'' The motion was denied by the magistrate.

fendant's statement prior to the time that the trial judge made his determination that the defendant was guilty. ▮ But assuming that no proper objection was made in the trial court prior to the admission of the evidence, if such a statement was in fact involuntarily made the defendant may still claim error on appeal because to hold otherwise would be to sanction a denial of due process of law. (See *People* v. *Millum,* 42 Cal.2d 524, 526-527 [267 P.2d 1039] ; Witkin on California Evidence, 1961 Supp., §252.)[2]

▮ Where a confession is coerced by a threat to arrest a near relative, it is not admissible. (*People* v. *Matlock,* 51 Cal.2d 682, 697 [336 P.2d 505] ; *People* v. *Montano,* 184 Cal. App.2d 199, 210 [7 Cal.Rptr. 307] ; *People* v. *Shelton,* 151 Cal. App.2d 587, 588 [311 P.2d 859] ; *People* v. *Mellus,* 134 Cal. App. 219, 225 [25 P.2d 237] ; see Note 80 A.L.R.2d 1428.) In the *Mellus* case, a statement was made to the defendant with respect to his mother which was in part as follows: ''The question is, do you want to come clean on it yourself and exonerate her, or are we going to hold both of you? . . . We are entitled to the truth about it here to see whether we shall hold her or not. . . .'' The sheriff testified that before Mellus made the confession in question he had denied that he had committed the offense. The officer further stated: ''Yes, I might have said, 'if you don't tell just what happened, I will have to hold your mother. . . .' '' The court said (134 Cal. App., at p. 225) : ''Here, there can be little question but that the sheriff threatened the defendant that he would lock his mother up, and the promise to let the mother go free if he made a confession is certainly to be implied from the testimony quoted. . . . Much consideration must be given to the determination of the trial court from the attendant circumstances, that the confession is voluntary, yet on the other hand if it satisfactorily appears, as it does in this case, that the sheriff had stated that if the defendant did not tell all about

---

[2]This court said in *People* v. *Rodriguez,* 58 Cal.App.2d 415 [136 P.2d 626], at page 421: ''The failure to make a timely and sufficient objection is of no moment where a grave matter of public policy is involved. Counsel for the defense do not bear the entire burden of protecting the constitutional rights of their client. Where those have been invaded, as they appear to have been here, and the opportunity arises on appeal to undo the wrong, the court cannot allow itself to be hampered by the failure of counsel to register an objection. Undoubtedly a defendant can waive a constitutional right, but where the alleged waiver is of the right to exclude a confession obtained by illegal means, we are not willing to accept less than an express waiver, at least not one arising from mistake and inadvertence.''

674

what took place, he would have to lock up the mother of the defendant, so clearly and convincingly appears from the record that we cannot escape the conclusion that the court erred in the admission of the confession of the appellant.'' (See also *People* v. *Trout,* 54 Cal.2d 576, 582-585 [6 Cal.Rptr. 759, 354 P.2d 231].)

It is the duty of this court to examine the uncontradicted facts in the present case in order to determine independently whether the statement made by the defendant was voluntary. (*People* v. *Trout, supra,* 54 Cal.2d 576, 583; *People* v. *Baldwin,* 42 Cal.2d 858, 867 [270 P.2d 1028] ; *People* v. *Lindsey,* 188 Cal.App.2d 471, 478 [10 Cal.Rptr. 488].) As is shown in the résumé hereinabove set forth, Deputy Sheriff Tizenor testified that he told the defendant that if he did not know to whom the cigarettes belonged, the officers did not know and that, therefore, they would have to take both the defendant and his wife to jail. He further testified that ''possibly'' he said that the children would go ''to juvenile.'' Thereafter, the defendant admitted that the cigarettes were his. The threat embodied in the statement of the officer is plain; that the defendant's response resulted from the improper pressure is clear. In view of the threat made by Officer Tizenor prior to the defendant's statement, the fact that Sergeant Caraway asked the defendant several times whether the defendant was making his statement so that his wife could remain at home does not detract from the conclusion that such statement was involuntarily made. (Cf. *People* v. *Mellus, supra,* 134 Cal.App. 219, 226.) The case is readily distinguishable from cases such as *People* v. *Montano, supra,* 184 Cal. App.2d 199, wherein there was a conflict in the pertinent evidence and the testimony was such that the trial court could reasonably infer therefrom that the statement of the defendant was made voluntarily.

In weighing the effect of the error, we have not failed to note that an able and experienced trial judge, and not a jury, was the trier of fact. (See *People* v. *Elliott,* 186 Cal.App.2d 185, 190 [8 Cal.Rptr. 716].) But the problem involves more than a question of the law of evidence; it is a matter of whether the requirement of due process has been observed. We cannot adequately ascertain from the record how the trier of fact answered the factual question of whether the defendant's statement was voluntary. We do not know what part the statement played in the court's reasoning which led to the finding of guilt. Consequently, the governing law is

that stated in *People* v. *Brommel,* 56 Cal.2d 629, at page 634 [15 Cal.Rptr. 909, 364 P.2d 845], as follows: ". . . however strong the case otherwise the admission of involuntary confessions compels a reversal, and section 4½, article VI, of the Constitution can under no circumstances save the judgment. (*People* v. *Trout, supra,* 54 Cal.2d at p. 585; *Rogers* v. *Richmond,* 365 U.S. 534 [81 S.Ct. 735, 739-740, 5 L.Ed.2d 760].) "
(See also Witkin on California Evidence, 1961 Supp., § 252.)

Reversed.

Shinn, P. J., concurred.

FILES, J.—I dissent because I cannot agree that defendant is entitled to reversal on account of evidence which he himself put before the court.

The record shows that when the case was called for trial on October 17, 1960, a trial by jury was waived. Defendant, being represented by counsel, joined with the People in the following stipulation which was stated by the district attorney:

"The People offer to stipulate that the Court may consider the transcript of the preliminary hearing which resulted in the filing of Information No. 229,420, with the same force and effect as though the witnesses who were there called, sworn and testified, were here called, sworn and testified, and that People's Exhibit 1 which was introduced into evidence at that time is re-introduced into evidence at this time, subject to any legal objection as to its admissibility; and any stipulations that have been entered into for the purpose of that trial, are entered into for this trial; and both sides reserve the right to enter any additional evidence."

The transcript of the preliminary hearing shows that defense counsel there requested the municipal court to strike the officer's testimony relating to defendant's admissions, and that this motion was denied by the judge presiding at the preliminary. No objection to the admissibility of that testimony was made at the trial, no motion to strike any of it was made, and there is no suggestion that defendant did not desire the court to consider all of it.

Trial was continued to November 7. On that day the court announced that he had read the preliminary transcript.

The exhibits (i.e., the marijuana found in defendant's apartment) were received in evidence. Defendant then testified on his own behalf. He described the conversation with

the officers after the marijuana was found in his bedroom. He said that he at first denied knowledge of it, then the officers threatened to arrest his wife and take his children, and that he thereupon admitted ownership of the cigarettes, and that this admission was false. The tactics of the defendant at the trial were neither inadvertent nor inept. His purpose was to show that the officers' entry into his apartment was forced, and doubtless defendant believed that proving the entire conversation, including the threats against members of his family, would add color to his other contentions. The evidence in the trial court was conflicting as to whether or not the officer was invited into the apartment, and the court's implied finding that the entry was lawful is supported by substantial evidence. There is apparently no disagreement within this court that the evidence is sufficient to support the conviction without the use of the admission which defendant made to the arresting officer.

It is a common practice to use the transcript of the preliminary hearing at the trial by stipulation. Such use in any case would violate the constitutional rights of the defendant but for the fact that defendant stipulates to it. It is a familiar tactic for a defendant to stipulate that the transcript be received, and then complain of it on appeal. The cases consistently hold that the People and the trial court may rely upon defendant's stipulation, and that defendant's rights are not infringed thereby. Some of these cases are *People* v. *Wallin,* 34 Cal.2d 777, 780 [215 P.2d 1]; *People* v. *Dessauer,* 38 Cal.2d 547, 552 [241 P.2d 238]; *People* v. *Tanner,* 77 Cal. App.2d 181, 188 [175 P.2d 26]; *People* v. *Graves,* 84 Cal.App. 2d 531, 535 [191 P.2d 32]; *People* v. *Donnelly,* 95 Cal.App. 2d 595, 598 [213 P.2d 502]; *People* v. *Young,* 100 Cal.App. 2d 488 [224 P.2d 46]; *People* v. *Barry,* 153 Cal.App.2d 193, 204 [314 P.2d 531]; *People* v. *Johns,* 173 Cal.App.2d 38, 45 [343 P.2d 92]; *People* v. *Jackson,* 177 Cal.App.2d 181, 183 [1 Cal.Rptr. 857]; *People* v. *Smyer,* 177 Cal.App.2d 477, 478 [2 Cal.Rptr. 215]; cf. *People v. Robillard,* 55 Cal.2d 88, 101 [10 Cal.Rptr. 167, 358 P.2d 295].

No one can doubt that the admission of an improperly obtained confession may be a denial of due process of law even though the defendant neglects to make a timely objection, and even though there is sufficient other evidence to support the judgment. I find no authority for applying that principle to reverse a conviction where the defendant himself placed before the court the fact that at some time in the past he had

made involuntary extrajudicial admissions. The cases relied on in the majority opinion involve situations where the defendant so far failed to defend himself at the trial that it was the duty of the trial judge to intervene on his behalf. There is nothing comparable here. Defendant was entitled to present his defense as he saw fit. I am unable to understand that a trial court which allowed defendant to do this has thereby deprived him of due process of law.

A petition for a rehearing was denied May 26, 1962. Files, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied June 20, 1962.