Filed 3/6/14  P. v. Richmond CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056086 |
| v. | (Super.Ct.No. RIF1100710) |
| JOSUPH RICHMOND, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and Anthony DaSilva and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Defendant and appellant Josuph Richmond took his girlfriend's two-year-old son (Doe) to the hospital for treatment of a broken arm. Defendant said he had been throwing the child in the air to stop him from crying when he accidentally dropped him. The hospital staff suspected the fracture was not accidental. Suspicious marks were also observed on Doe's inner thigh. The police were called to investigate. During an interview with detectives, defendant said he touched the child's inner thigh three times with his hot Bic lighter to stop the child from misbehaving.

Defendant was charged with two counts of child abuse under Penal Code section 273d, subdivision (a). Count 1 was based on the use of the lighter to burn the child; count 2 was based on the broken arm. Regarding count 2, a sentence enhancement was alleged for personally inflicting great bodily injury on a child under the age of five. (Pen. Code, §§ 1192.7, subd. (c)(8), 12022.7, subd. (d).)

A jury convicted defendant on count 1 as charged and, on count 2, of the lesser included offense of assault. (Pen. Code, § 240.) Defendant was sentenced to county jail for a total of four years, two of which were suspended under Penal Code section 1170, subdivision (h)(5).

Defendant appealed. He asserts two contentions regarding count 1: (1) his incriminating statements to detectives were coerced by threats and promises of leniency, and (2) if his first contention was forfeited by failing to raise it in the trial court, then he was denied his right to effective assistance of counsel at trial. We conclude defendant

2

has forfeited his first claim and, if it was not forfeited, he has failed to establish that his confession was involuntary as a matter of law. We reject defendant's ineffective assistance claim because he has failed to establish that the failure to seek exclusion of his confession was deficient or that he was prejudiced by the omission.

## II. FACTUAL BACKGROUND

On the morning of January 24, 2011, K. Brown, defendant's girlfriend, left her apartment for work, leaving defendant and Brown's two-year-old son, Doe, still asleep. A short time later, defendant called Brown to tell her he had thrown Doe in the air in an effort to stop him from crying, but accidentally dropped him. Defendant told Brown that Doe's arm was broken and "laying . . . weird." Defendant then took Doe to the hospital.

At the hospital, doctors determined Doe's arm was broken completely through his humerus. An emergency room doctor contacted Dr. Susan Horowitz, a child abuse specialist, because Doe's fracture did not seem consistent with defendant's story that he accidentally dropped Doe. Dr. Horowitz concluded the break was "inflicted by a great amount of force."

During her examination, Dr. Horowitz noticed patterned marks on Doe's inner thigh, a healing laceration above his eye, and "loop marks" on his back. Dr. Horowitz believed that these marks were also inflicted. The Riverside County Sheriff's Department was contacted to investigate suspected child abuse. Doe was taken into protective custody by a child protective services agency (CPS) and placed in foster care.

3

On February 22, 2011, Brown was in juvenile court for a hearing in Doe's juvenile dependency case. That day, Detectives Reinbolz and Young picked up defendant at Brown's home (where he was living at the time) and drove him to the police station. After reading him his *Miranda*[1] rights, the detectives interviewed defendant for two or three hours. The audio of the interview was recorded. A five-minute excerpt of the recording was played and admitted into evidence at trial. This excerpt includes the following colloquy:

"[DETECTIVE] REINBOLZ: . . . And our whole goal on this whole case is, is make sure that we get the proper person and we get the person that did this and they get the proper help and yes, will there have to, will their hand have to be slapped over this, yes it will, you know, but this is already something that is already done and over with and we can't, we can't reverse the time, but it's something that we can correct, so it never happens again.

"[DEFENDANT]: I do need classes, I think.

"[DETECTIVE] REINBOLZ: For your anger issue? That's one step, that's one step. Um, another step would be admitting to the things that you've done in the past.

"[DEFENDANT]: All I did was toss him up.

"[DETECTIVE] REINBOLZ: K, but who did this?

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

4

"[DEFENDANT]: I did."[2]

It is apparent from other statements made during the interview that what defendant "did" was touch Doe's inner thigh with a hot Bic cigarette lighter three times. Defendant said he did this to get Doe to stop misbehaving.

## III. DISCUSSION

Defendant contends his confession that he burned Doe with a lighter was involuntary and its admission into evidence violated his constitutional rights to due process. More specifically, he asserts the detectives "threatened that CPS would not return [Doe] to Brown unless [defendant] admitted to some wrongdoing and promised that [he] would receive counseling." As we explain below, defendant has forfeited this claim by failing to raise it below. If the claim has not been forfeited, it fails because we cannot conclude that his statements are involuntary as a matter of law.

Defendant further contends that if his coerced confession argument has been forfeited, his trial counsel's failure to preserve the issue for appeal deprived him of his right to the effective assistance of counsel. We conclude that, based on our record, he has failed to establish that his counsel was ineffective.

A. *Additional Facts and Procedural History*

Prior to trial, the prosecution sought a ruling on the admissibility of the five-minute excerpt of defendant's police interview in which defendant admitted burning

---

[2] The audio recording of the five-minute interview excerpt is included in the record on appeal, as is a five-page transcription of the excerpt. No other portion of the recording or additional transcription is included in our record.

5

Doe's inner thigh. At a hearing on the issue, defense counsel did not object to the evidence, but pointed out that he may seek to introduce additional portions of the recording, or even "the whole thing." He acknowledged that there is a "voluntariness issue" with respect to the confession, but did not move to suppress or exclude the confession; according to defense counsel, "the law in California isn't great on voluntariness for the defense . . . ." Instead, defense counsel indicated that a theory of the defense at trial was that defendant's confession was false and induced by the detectives' promises of leniency.

In support of this defense, counsel indicated during an in camera hearing that he intended to introduce the following statement from Detective Reinbolz (which counsel said was transcribed on page 70 of the interview transcript): "I think there's something you are probably not telling me, um, and you got to get it. You've got to get it from here. You've got to come forward and have to admit—if you did something, you have to admit it and get over this hurdle. I hope this never happens again to [Doe]. And the only way we're going to fire—to find out who inflicted those—and if you are ever—and if it's ever going to happen again, will you get [Doe] back? Whoever did this has to go through some kind of treatment, and it's got to go to some kind of parenting classes. They have to stand up and say I did it and I'm sorry. I will never do it again. That's the only way you are ever going to get over this hurdle."

Although the court ruled defendant could introduce this statement, defense counsel did not play the recording of the statement during trial. However, in questioning

defendant, defense counsel directed defendant's attention to page 70 of the transcript and asked him for his understanding of Detective Reinbolz's statements. Defendant answered: "Basically I had to come forward and tell them that I did it for me to reunite with [Doe]."

Defendant further testified he lied to police about burning Doe with a lighter because he believed the detectives were threatening that Doe would never be returned to Brown unless he confessed to burning Doe's thigh. He further stated that the detectives led him to believe that the only way Doe would be returned to Brown was if defendant received treatment or attended classes.

During his examination of Detective Reinbolz, defense counsel read the following statement, which he indicated was set forth on pages 76 and 77 of the interview transcript: "Until we get to the bottom of this, [Doe] will not ever come back until, I should say, I shouldn't use the word, but [Doe] will not come until we—you guys—until we get to the bottom of this. You need to come forth so she can have her child back." Detective Reinbolz admitted making the statement, and added that they "talked about getting [Doe] back, but we need to get to the bottom of—the reason why [Doe] was abused." When defendant was asked at trial about this statement, he testified that he "had it in [his] head that we'd get him back if [he would] admit to it.

During an in camera proceeding that took place just prior to defense counsel's redirect examination of Detective Reinbolz, defense counsel expressed concern that the evidence introduced regarding the availability of "help" for defendant might have the

7

unintended consequence of persuading the jurors to convict defendant so that defendant could receive the help he needed. That is, defense counsel appeared to be concerned that the jurors might want to ensure that defendant got the help he needed and convict him for that reason without understanding that the conviction would result in defendant's incarceration. Defense counsel wanted to question Detective Reinbolz to elicit from him that the purpose of his interrogation of defendant was to elicit incriminating statements that could result in incarceration, and that "the criminal justice system is not designed for the purpose merely of giving help."

The court told counsel he could ask Detective Reinbolz questions pertaining to coercive questioning, but he would not be allowed to ask questions pertaining to punishment or sentencing, or "what the criminal justice system is about." The court also reminded counsel: "[Y]ou wanted to present a defense that your client was induced or coerced . . . to give a false confession. And you made a strategic call. You made a call to bring that in." In response, defense counsel stated: "[T]his is what my client's told me. . . . [A]nd my client wants to testify. I didn't just decide that I'm going to come up with a false confession defense. This is what my client's told me. And he's wanted to take the stand."

In his closing argument to the jury, defense counsel asserted that defendant's confession "was not a sincere confession. It was a false confession designed to accomplish the will of the detectives . . . ." He explained that defendant was led to

8

believe that if he admitted the burnings and took some classes, Doe would be returned to his care; so he decided to "play along and do whatever he had to do to get [Doe] back."

B. *Involuntariness of Confession*

    1. <u>Background Legal Principles and Standard of Review</u>

An involuntary confession is inadmissible under the due process clauses of the federal and California Constitutions. (*Jackson v. Denno* (1964) 378 U.S. 368, 385-386; *People v. Holloway* (2004) 33 Cal.4th 96, 114 (*Holloway*); *People v. Benson* (1990) 52 Cal.3d 754, 778.) "'A statement is involuntary if it is not the product of "'a rational intellect and free will.'" [Citation.] The test for determining whether a confession is voluntary is whether the defendant's "will was overborne at the time he confessed." [Citation.]'" (*People v. McWhorter* (2009) 47 Cal.4th 318, 346 (*McWhorter*).) This determination requires the court to evaluate "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 226; accord, *People v. Linton* (2013) 56 Cal.4th 1146, 1176; *People v. Thompson* (1990) 50 Cal.3d 134, 166.)

Relevant "characteristics of the accused" include the defendant's maturity, education, intelligence, physical condition, and mental health. (*Withrow v. Williams* (1993) 507 U.S. 680, 693; *Schneckloth v. Bustamonte, supra,* 412 U.S. at p. 226.) The "details of the investigation" include evidence of police coercion, the length and location of the interview, the nature of the questioning (such as repeated or prolonged questioning), the use of physical punishment or deprivation of food or sleep, and the lack

9

of advice as to the defendant's constitutional rights.  (*Withrow v. Williams, supra,* at pp. 694-695; *Schneckloth v. Bustamonte, supra,* at p. 226; *People v. Williams* (1997) 16 Cal.4th 635, 660.)

When a defendant objects to the admission of a confession, the court must conduct "a fair hearing in which both the underlying factual issues and the voluntariness of [the defendant's] confession are actually and reliably determined."  (*Jackson v. Denno, supra,* 378 U.S. at p. 380.)  At that hearing, "'[t]he prosecution has the burden of establishing by a preponderance of the evidence that a defendant's confession was voluntarily made.' [Citation.]"  (*People v. Linton, supra*, 56 Cal.4th at p. 1176.)  The "trial court's findings as to the circumstances surrounding the confession are upheld if supported by substantial evidence, but the trial court's finding as to the voluntariness of the confession is subject to independent review."  (*People v. Massie* (1998) 19 Cal.4th 550, 576; accord, *People v. Carrington* (2009) 47 Cal.4th 145, 169.)

2.  <u>The Claim is Forfeited by Defendant's Failure to Raise the Issue at Trial</u>

Defendant did not object to the admission into evidence of the excerpt of the police interview.  Generally, failing to challenge the admission of a defendant's out-of-court statement on the ground that it was involuntary or coerced will not be addressed on appeal when no objection was made at trial.  (*People v. Kennedy* (2005) 36 Cal.4th 595, 612, overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 458-459; *People v. Ray* (1996) 13 Cal.4th 313, 339 (*Ray*); but see *In re Cameron* (1968) 68 Cal.2d 487, 503 [when a confession is involuntary "as a matter of law," a defendant is not

10

precluded from raising the issue on appeal despite the failure to raise it below].)  "In requiring an objection at trial, the forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error."  (*People v. Kennedy, supra,* at p. 612.)  The rule applies to claims based on fundamental constitutional rights as well as statutory violations.  (*Ibid.*)

Application of the forfeiture rule is particularly appropriate here because the failure to raise the issue below prevented the development of an adequate record to review the issue on appeal.  A similar situation was presented in *Ray.*  In that case, the defendant argued for the first time on appeal that his "confession was involuntary because it was given in exchange for an official 'promise' of a desired outcome or 'benefit.'"  (*Ray, supra,* 13 Cal.4th at p. 339, fn. omitted.)  The Supreme Court held that the claim had been waived.  It explained:  "As a result [of the defendant's failure to raise the claim in the trial court], the parties had no incentive to fully litigate this theory below, and the trial court had no opportunity to resolve material factual disputes and make necessary factual findings."  (*Ibid.*)

*People v. Lewis* (2001) 26 Cal.4th 334 is also instructive.  In that case, the defendant, a minor, argued on appeal that his confession was given after he had requested to speak to his mother and thereby invoked his Fifth Amendment privilege against self-incrimination.  (*Id.* at p. 385.)  The minor testified at trial that he told a detective he wanted to speak to his mother during the police interview but was told he would have to

11

wait.  (*Ibid*.)  He did not, however, seek to exclude the confession on that basis.  The Supreme Court held that the claim had been waived, stating:  "Notions of fairness and practicality require that the prosecution be given an opportunity to argue this issue during trial.  Without such objection, the parties could not develop the issue or further examine witnesses."  (*Ibid*.)  The court concluded that because the defendant failed to raise the claim below, the court was "left with an incomplete record" and could not "speculate to facts that would have given rise to defendant's claim."  (*Id.* at p. 386.)

The reasons given by the *Ray* and *Lewis* courts are applicable here.  If defendant had made this claim below, the parties would have had the incentive to litigate—and the trial court would have been required to determine—the factual and legal issues pertaining to the voluntariness of the confession.  As noted above, the question of voluntariness is based on the totality of circumstances surrounding the confession.  (See, e.g., *People v. Linton, supra,* 56 Cal.4th at p. 1176; *Holloway, supra,* 33 Cal.4th at p. 114.)  Such circumstances would presumably include the entire recording of the police interview—or at least much more of it than the five minutes produced for trial.  (See *McWhorter, supra,* 47 Cal.4th at pp. 347-348 [holding that trial court properly examined totality of circumstances by viewing recording of police interview in its entirety, not "in snippets or parts"].)  Indeed, on appeal, defendant relies on his trial counsel's reading of the page 70 excerpt of the interview, the accuracy or authenticity of which was never determined.  If, however, the voluntariness of defendant's statements was actually challenged and litigated below, the audio recording of this excerpt would presumably have been

12

considered (and included in the record on appeal), and the People would have had the opportunity to produce additional excerpts (or the entire recording) to support the admissibility of the statements.[3]

Among the disputed factual issues regarding the voluntariness issue in this case is what, if anything, was said to defendant in the police car on the way to the interview. Defendant testified at trial that the detectives told him in the car that Doe would be returned to him and Brown if he confessed. Detective Reinbolz, however, indicated that no such conversation took place. If defendant had raised the voluntariness of his statements below, this dispute could have been resolved by the trial court, which had the opportunity to observe the witnesses and evaluate their credibility. We would then rely on the court's factual finding (so long as it is supported by substantial evidence). (See *People v. Linton, supra,* 56 Cal.4th at pp. 1176-1177.) Because defendant did not raise the issue below, the trial court had no opportunity to resolve the matter and make appropriate findings. (See *Ray, supra,* 13 Cal.4th at p. 339.)

In addition, evaluating the totality of circumstances would also call for consideration of evidence regarding the details of defendant's interview, as well as evidence of defendant's maturity, intelligence, education, physical condition, and mental health. (See *Withrow v. Williams, supra,* 16 Cal.4th at pp. 694-695; *Schneckloth v.*

---

[3] Defendant states the facts surrounding a statement are not in dispute when the statement is tape recorded. (See, e.g., *McWhorter, supra,* 47 Cal.4th at p. 346.) This rule, however, assumes that the recording is included in the record. That cannot be said here, where we have only a five-minute excerpt of an interview that lasted at least two hours.

13

*Bustamonte, supra,* 412 U.S. at p. 226.)  Because the issue was not raised below, our record includes few indications of the nature and conduct of the interview and no factual findings on such matters.  At trial, Detective Reinbolz stated that the interview lasted between two and three hours.  There is nothing to indicate, however, how much of this time was consumed by questioning or taken up by breaks.  Regarding the tenor of the interview, Detective Reinbolz stated that Detective Young took the lead in the interview and that Detective Young's demeanor during interrogations "is to go in there soft and talk to people and try to get to an understanding of what happened at the scene."[4]  The record is otherwise effectively silent as to the nature of the interview.

Nor is there meaningful evidence or factual findings regarding the "characteristics of the accused."  (See *Schneckloth v. Bustamonte, supra,* 412 U.S. at p. 226.)  On appeal, defendant asserts he "is an unsophisticated person with a minimal education."  For this point, he refers us to the probation report prepared *after the verdicts in this case*.  Again, if defendant had raised the matter below, evidence of pertinent characteristics of the accused could have been introduced and factual findings made; because he did not, we have an insufficient record to review the matter.

In short, by failing to raise this argument below, defendant deprived the People of the opportunity to introduce relevant evidence on the issue of voluntariness, prevented the development of an adequate record regarding the issue, and deprived us of the benefit of the trial court's factual determinations.  Under these circumstances, defendant has

---

[4]  Detective Young did not testify at trial.

14

forfeited the claim on appeal. (See *People v. Lewis, supra,* 26 Cal.4th at pp. 385-386; *Ray, supra,* 13 Cal.4th at p. 339.)

    3. <u>If the Issue is Not Forfeited, It is Without Merit</u>

There is authority for the assertion that the claim that a confession was involuntary may be considered on appeal even in the absence of an objection below. (See *In re Cameron, supra,* 68 Cal.2d at p. 503.)[5] To the extent the claim is considered, it is reviewed to determine whether the confession was involuntary as a matter of law. (*Ibid*.) In light of this standard, we now turn to the merits of defendant's claim.

"To be admissible, a confession must be '"free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."' [Citation.]" (*Brady v. United States* (1970) 397 U.S. 742, 753; accord, *People v. Neal* (2003) 31 Cal.4th 63, 79; *People v. Cahill* (1994) 22 Cal.App.4th 296, 312.) "'However, mere advice or exhortation by the police that it would be better for the accused to tell the truth when unaccompanied by either a threat or a promise does not render a subsequent confession involuntary. . . . Thus, "[w]hen the benefit pointed out by the police to a

---

[5] We note that the continuing validity of *In re Cameron, supra,* 68 Cal.2d 487 on this point has been questioned. In *People v. Kelly* (1992) 1 Cal.4th 495, the defendant cited *In re Cameron* and argued "that there need not be an objection when the record shows that the confession was involuntary as a matter of law." (*People v. Kelly, supra,* at p. 519, fn. 5.) The court stated: "We need not decide whether that rule has survived in light of subsequent authority and the development of the law of ineffective assistance of counsel, for our review of the record convinces us that the confession was not involuntary as a matter of law." (*Ibid*.) As we explain below, we come to the same conclusion in this case.

suspect is merely that which flows naturally from a truthful and honest course of conduct," the subsequent statement will not be considered involuntarily made. [Citation.] On the other hand, "if . . . the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible . . . .'" [Citations.]" (*Holloway, supra,* 33 Cal.4th at p. 115.)

Initially, we reject defendant's reliance on his testimony as to what was said in the police car on the way to the interview. According to defendant, Detective Young said: "[W]e need to get this over with and that if I confess to this, that me and [Brown] would get [Doe] back." He added that he understood from this "that they wanted me to tell them that I did it for me to get the kid back." Detective Reinbolz, however, testified that he did not remember this being said to defendant. He explained further: "When we pick somebody up for an interview, we don't talk about the case until we get them back to the station. Usually we talk about general things, their hobbies, what they do for a living, those kind of things. If that was brought up, I would have noticed it." This implies that the statement defendant attributed to Detective Young was not made. There was, as discussed above, no factfinding on this point by the trial court. In this situation, we are required to "'''''accept that version of events which is most favorable to the People, to the extent that it is supported by the record.'" [Citations.]'''" (*McWhorter, supra,* 47 Cal.4th at p. 346.) Because the version favorable to the People—that the statement was

16

not made—is supported by inferences reasonably drawn from Detective Reinbolz's testimony, we will disregard defendant's testimony as to what was said in the car on the way to the interview.

In arguing that he admitted burning Doe because he was promised leniency, defendant relies primarily upon the excerpt from page 70 (as read by his trial counsel) and the portion of the five-minute recording quoted above. In these excerpts, Detective Reinbolz (1) urged defendant to admit to the things he had done in the past and (2) indicated that whoever hurt Doe would need to get help and go to parenting classes. Nothing in his statements express or imply any promise of leniency as a matter of law. The suggestion that defendant admit what he had done is no more than an "'exhortation[] to tell the truth or clear his conscience,'" which does not constitute coercion. (See *People v. Hill* (1967) 66 Cal.2d 536, 548-549, quoting *People v. Ditson* (1962) 57 Cal.2d 415, 433.) The references to getting "the proper help," going "through some kind of treatment," and taking "some kind of parenting classes" do not imply that defendant would not be prosecuted for his actions.

Defendant's argument is also belied by his trial testimony regarding the police interview. When asked at trial what he thought "would happen if [he] admitted . . . that [he] had burned [Doe] with a lighter," he answered: "Jail." When defense counsel sought clarification, defendant added: "Jail and I think what would be called a child abuser." He did not say that he believed he could receive help or treatment in lieu of "jail"; rather, he clearly understood that admitting to burning Doe would result in him

17

going to jail.  Thus, whether the statements are viewed objectively or as defendant subjectively understood them, they do not constitute promises of leniency.  (See *People v. Clark* (1993) 5 Cal.4th 950, 989 [the defendant's confession was voluntary when "it is clear that defendant did not view the exchange between himself and [the officer] as containing a promise of leniency"], disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Defendant also points to Detective Reinbolz's statements that Doe would not be returned to Brown "until we get to the bottom of this.  You need to come forth so she can have her child back."  Detective Reinbolz's statements can be understood as a shorthand way of explaining that if, after getting "to the bottom of this," the juvenile court determines that Doe's burns were not caused by Brown, and defendant "come[s] forth" with information leading to that determination, the juvenile court might return Doe to Brown.  (See Welf. & Inst. Code, § 361, subd. (c)(1) [court shall return child to parent's custody unless return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child].)  In this sense, Detective Reinbolz's statement is merely an explanation of """"that which flows naturally from a truthful and honest course of conduct . . . ."""  (See *Holloway, supra,* 33 Cal.4th at p. 115.)  Indeed, Detective Reinbolz explained that the purpose of his statements was "to find out what happened to the child and make sure that the child does not go back into an abusive home again"; it was not "a tactic to get a person to admit to something they didn't really do." Again, because the court was not called upon to decide, and did not decide, the factual

18

issues concerning the statements, we must accept the version of events most favorable to the People. (*McWhorter, supra,* 47 Cal.4th at p. 346.) In this light, the statement is not coercive or improper as a matter of law.

Defendant relies on *People v. Trout* (1960) 54 Cal.2d 576, overruled on another point in *People v. Cahill* (1993) 5 Cal.4th 478, 509 and 510, footnote 17. In *Trout*, the police took defendant's wife into custody, even though they had no grounds for her arrest, and held her under circumstances that implied she would not be released unless the defendant confessed. (*Id.* at pp. 580-585.) The court held that the defendant's "confession resulted from improper pressure by the police and should not have been received in evidence." (*Id.* at p. 585.) In the present case, defendant analogizes the groundless detention of the defendant's wife in *Trout* with CPS's protective custody of Doe. The situations are obviously different; there is nothing in the record to suggest that CPS's detention of Doe was improper in any way or was undertaken for the purpose of securing a confession from defendant. More importantly, contrary to defendant's assertion, the record does not establish as a matter of law that the interviewing officers promised Doe would be released to Brown if defendant admitted to wrongdoing. *Trout* is thus easily distinguished.

Defendant's reliance on *Haynes v. Washington* (1963) 373 U.S. 503 and *People v. Rand* (1962) 202 Cal.App.2d 668 are also misplaced. In *Haynes*, the police refused to allow the defendant to communicate with any of his family members until the defendant confessed. (*Haynes v. Washington, supra,* at p. 514). Here, however, defendant was

19

never threatened with being held incommunicado. In *Rand*, the police threatened to put the defendant and his wife in jail and put his children in juvenile hall unless he confessed to owning marijuana cigarettes found in his apartment. (*People v. Rand, supra,* at pp. 669-670.) Unlike the facts in *Rand,* the detectives in the present case never threatened to put any of defendant's loved ones in jail as a means to coerce a confession. In fact, Doe had already been taken into protective custody prior to defendant's arrest.

*Lynumn v. Illinois* (1963) 372 U.S. 528 and *People v Medina* (Colo. 2001) 25 P.3d 1216, relied upon by defendant, are also distinguishable. In *Lynumn*, the defendant was "encircled in her apartment by three police officers" and told that "state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate.'" (*Lynumn v. Illinois, supra,* at p. 534.) In *Medina*, the police threatened the defendant with the removal of his child from his and his wife's custody if he did not confess to injuring the child. (*People v. Medina, supra,* at pp. 1218-1219.) The Colorado Supreme Court upheld the trial court's order excluding the defendant's confession because of the threat to remove the child, together with other evidence of police coercion. Regarding the threat to remove the children, the court observed that removal of a child from his parent's home is "not within the power, responsibility, or province of the interrogating officers. . . ." (*Id.* at p. 1225.) In contrast to these cases, Doe was already taken from his mother's custody, and there is no evidence to suggest that the removal was part of an effort to get defendant to confess. Thus, in the case at bar, the detectives did not act outside the scope of their power; they merely told defendant of a "benefit" (i.e.,

20

Doe's possible return to Brown's custody) that might ""flow[] naturally from a truthful and honest course of conduct . . . .""" (See *Holloway, supra,* 33 Cal.4th at p. 115.)

There is little evidence of other facts that could support defendant's claim. The entire interview lasted between two and three hours. Because our record includes only relatively brief, isolated segments of the interview, it is impossible to determine the pace of the interview and the length of any breaks in the interview. Nor is there any meaningful evidence to suggest that the nature of the interview was coercive in any way.

Finally, defendant points to that fact that he has a high school education as evidence that he is an unsophisticated person with minimal education. The assertion is unavailing. In *People v. Boyette* (2002) 29 Cal.4th 381, the defendant had finished only the ninth grade and was unfamiliar with the legal system. (*Id.* at p. 410.) In language equally applicable here, the Supreme Court rejected the defendant's claim he was coerced into confessing, stating: "Although [the defendant's youth, lack of educational achievement, modest level of literacy, and unfamiliarity with the legal system] are factors a court should consider when evaluating the voluntariness of a confession, the record does not even hint that these factors came into play in this case." (*Id.* at p. 412.) There is, in short, nothing to indicate that the defendant's failure to obtain more than a high school education contributed to his confession.

For all the foregoing reasons, we cannot conclude that defendant's statements regarding burning Doe's inner thigh were involuntary as a matter of law. The claim is therefore rejected.

21

C. *Ineffective Assistance of Counsel*

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215; see also *People v. Jennings* (1991) 53 Cal.3d 334, 357.) "Under this right, the defendant can reasonably expect that in the course of representation his counsel will undertake only those actions that a reasonably competent attorney would undertake. But he can also reasonably expect that before counsel undertakes to act at all he will make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation." (*People v. Ledesma, supra,* at p. 215.)

To prevail on a claim of ineffective assistance of counsel, a criminal defendant has the burden of proving (1) counsel's deficient performance under an objective standard of professional reasonableness and (2) prejudice to the defendant under a test of reasonable probability. (*Strickland v. Washington* (1984) 466 U.S. 668, 690-691 (*Strickland*); *People v. Mayfield* (1993) 5 Cal.4th 142, 175.)

A criminal defense trial attorney's performance was deficient if his "representation fell below an objective standard of reasonableness" in the light of prevailing norms of professional practice. (*Strickland, supra,* 466 U.S. at p. 688; *People v. Ledesma, supra,* 43 Cal.3d at p. 216). For us, "[t]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." (*Strickland, supra,* at p. 688.) Our review of counsel's performance is "highly deferential (*id.* at p. 689), and

22

"there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 437.) The burden of overcoming this presumption "is difficult to carry on direct appeal . . . : '"Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission."' [Citation.]" (*Ibid.*)

"Generally, failure to object is a matter of trial tactics as to which we will not exercise judicial hindsight." (*People v. Kelly, supra,* 1 Cal.4th at p. 520.) Similarly, a "defense counsel's decision not to file a motion he believes will be futile does not ""'substantially impair' . . . defendant's right to effective assistance of counsel.'" [Citations.]" (*People v. Gutierrez* (2009) 45 Cal.4th 789, 804-805.) Furthermore, "'[i]f the record sheds no light on why counsel acted or failed to act in the manner challenged, "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation" [citation], the contention must be rejected.'" (*People v. Kelly, supra,* at p. 520.)

Here, it is clear that defense counsel was aware of an issue regarding the voluntariness of defendant's confession. Indeed, the primary defense theory as to count 1 was that his confession was given only because of the detectives' promises of leniency. It is also apparent from the record that defense counsel made a deliberate tactical decision to not seek to suppress the confession. He noted the existence of "a voluntariness issue" in the case, but immediately added that "the law in California isn't great on voluntariness

23

for the defense . . . ." This suggests that counsel considered the possibility of moving to suppress defendant's statements, but rejected it because he believed the motion would not be successful.

A possible satisfactory explanation for counsel's failure to move to suppress defendant's confession is that counsel reasonably believed that such a motion would have been futile. (See *People v. Memro* (1995) 11 Cal.4th 786, 834 ["The Sixth Amendment does not require counsel "'to waste the court's time with futile or frivolous motions"'" [citation]."].) Based on our limited record, we cannot rule out this possibility. We have only five minutes of a two or three hour interview, and are told almost nothing regarding relevant characteristics of the accused and the nature of the interview. The missing content of the interview, as well as the circumstances surrounding the interview, may be critical to assessing the voluntariness of defendant's confession. It is certainly possible that defense counsel, who had access to the recording of the entire interview and was presumably familiar with the character of his client, reasonably concluded that moving to suppress the statements would be futile. Because the record does not affirmatively disclose that counsel had no rational tactical purpose for deciding not to seek to exclude the statement, he has failed to carry his burden of establishing that his counsel's performance was deficient.

Nor has defendant established that, if his counsel was deficient by failing to seek to exclude his confession, the omission was prejudicial. Under *Strickland*, "any deficiencies in counsel's performance must be prejudicial to the defense in order to

24

constitute ineffective assistance under the Constitution." (*Strickland, supra,* 466 U.S. at p. 692.) "[P]rejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*People v. Maury* (2003) 30 Cal.4th 342, 389, quoting *Strickland, supra,* 466 U.S. at p. 694.) "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." (*Strickland, supra,* at p. 696.)

In order to establish the probability of a different outcome at trial, defendant would need to first establish a reasonable probability that, if counsel had sought to suppress his confession, the effort would have succeeded. In our discussion of the merits of defendant's involuntary confession claim in the preceding part, we held that defendant's confession to police was not involuntary as a matter of law. For the same reasons, we conclude that defendant has failed to meet his burden of showing a reasonable probability that the trial court would have excluded his confession if the issue had been raised below.

Because defendant has failed to meet his burden as to either of the *Strickland* prongs, we reject his claim that he was deprived of his right to effective assistance of counsel.

25

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
                                                                    J.

We concur:

RICHLI _____
              Acting P. J.

MILLER _____
                              J.

26